Constance Chaix INDEST,
Plaintiff–Appellant,

v.

FREEMAN DECORATING, INC. and
Larry Arnaudet, Defendants–
Appellees.

No. 96–30212.

United States Court of Appeals,
Fifth Circuit.

Jan. 19, 1999.

Robert E. Winn, Sharon Cormack Mize, Sessions & Fishman, New Orleans, LA, for Plaintiff–Appellant.

Richard A. Goins, The Goins Law Firm, Brooke Duncan, III, Lisa Lemaire Maher, Adams & Reese, New Orleans, LA, for Defendants–Appellees.

Barbara L. Sloan, Washington, DC, for Equal Employment Opportunity Commission, Amicus Curiae.

Before JONES and WIENER, Circuit Judges, and FURGESON *, District Judge.

EDITH H. JONES, Circuit Judge:

Constance Chaix Indest sued Freeman Decorating, Inc. and its Vice President of Sales and Administration Larry Arnaudet alleging that she had been sexually harassed in violation of Title VII. The district court granted Arnaudet's motion to dismiss for failure to state a claim against him under Fed.R.Civ.P. 12(b)(6). Later, the district court granted Freeman's motion for judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Indest appeals both of these decisions.

As to Arnaudet, the law affords Indest no Title VII claim against a company employee. The more challenging question is whether Freeman is entitled to judgment as a matter of law following this year's Supreme Court decisions concerning employer liability for sexual harassment by a supervisor. *See Faragher v. City of Boca Raton*, —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, —— U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). We hold that, because Freeman promptly and effectively responded to Indest's equally prompt complaint, vicarious liability is inappropriate. The judgment is affirmed.**

## I. BACKGROUND

Freeman, a subsidiary of The Freeman Companies ("TFC"), provides services to convention sponsors and exhibitors. Arnaudet is a Freeman vice-president responsible for the company's overall sales strategy and related policies, procedures, and systems. Additionally, he serves as the account executive for several major annual trade shows and is in charge of all Freeman employees who work at the trade shows. Appellant Indest was employed by Freeman as an exhibitor services representative at one of its branch offices in New Orleans. As of the time this appeal was argued, Indest continued to work for Freeman.

Indest worked at a convention lasting from September 8 through 14, 1993, where Arnaudet was the Freeman executive in charge. Four times, Arnaudet made crude sexual comments and sexual gestures to Indest while she was alone and in the presence of her immediate supervisor, Angie Richard, and her director, Dawn DiMaggio.[1] On Friday evening, September 10, Indest was speaking with the director of sales and the national sales manager of the New Orleans office at a cocktail event when Arnaudet joined them and made another sexual comment to her. Indest objected and warned him this was sexual harassment. Arnaudet, incensed, ordered her not to threaten a vice-president, profanely disparaged her abilities as an employee, and said she must prove herself to him by working with him at a convention in Philadelphia. Indest became agitated and started crying. She took off from work the next day with her supervisor's approval. No further incidents of sexual harassment occurred after this episode.

On September 13, Indest reported all of the incidents to Dawn DiMaggio, as well as to the branch office manager, Steve Hagstette. Hagstette informed Dan Camp, TFC's human resources director in its Dallas corporate office. Indest was urged to contact Camp, and she spoke with him by telephone on September 20. Pursuant to Freeman's sexual harassment policy, Camp investigated the complaint, interviewing witnesses to the incidents, Indest's supervisors, and Arnaudet. Camp advised TFC's president and chairman, Don Freeman, of the complaints of Indest and of another incident that had occurred approximately six months earlier involving Arnaudet and another female employee (identified as "Jane Doe").

Freeman issued a verbal and written reprimand to Arnaudet, and Camp informed Indest of this reprimand in a conversation that took place on or about October 11. In that conversation, Camp also informed Indest that Arnaudet would apologize to her (an

---

* District judge of the Western District of Texas, sitting by designation.

** Judges Wiener and Furgeson concur in the judgment only. Judge Wiener reserves the right to file a separate opinion at a later date.

1. Indest's EEOC complaint lists four separate remarks/gestures in addition to the confrontation at the cocktail event.

idea which Indest rejected), and asked Indest for suggestions for how to discipline Arnaudet. Indest said she wished to leave the disciplining of Arnaudet up to the company.

On October 14, Camp received a letter from Indest, revealing her intention to file an EEOC charge because she feared retaliation. Indest also expressed concern for retaliation when Camp called her to ask about the letter. On November 2, TFC sent Suzanne Bragg, a human resources employee, to reassure Indest that there would be no retaliation. Camp flew to New Orleans to visit Indest a week later. He informed her that Arnaudet would be suspended without pay for seven days and would be prohibited from attending the annual management and sales meeting that he had historically organized and conducted. Camp promised that Indest would never again have to work at any trade shows where Arnaudet was present; he expressly guaranteed that her complaint would neither jeopardize her job nor inhibit her ability to advance within the company; and he told her the company would pay for any counseling she might need.

To demonstrate the company's concern about the incident at the highest level, Freeman personally confirmed Arnaudet's disciplinary action in writing on November 15, in a letter that stated in part: "[The company is] particularly concerned that there never be any discriminatory action taken against Connie Indest in retaliation [for] her complaint. It is vitally important that there be no future instances of sexual harassment of our employees by you." Freeman also advised an executive committee, composed of Arnaudet's contemporaries and superiors, of Arnaudet's conduct and resulting punishment.

Indest has received periodic pay raises since the incident, and she concedes that Arnaudet has not further harassed her. She does not allege that Arnaudet has subsequently harassed any other employee.

As a result of the episode, Indest states she has suffered the recurrence of an obsessive-compulsive disorder called trichotillomania (hair-pulling), anxiety, and sleeplessness, and has sought and received counseling. Indest filed an EEOC charge of sex discrimination and harassment. After receiving a right-to-sue letter, she sued Freeman and Arnaudet. The district court dismissed her claims against Arnaudet because he cannot be sued individually or in his official capacity under Title VII. The court granted judgment as a matter of law to Freeman, holding that whether or not Arnaudet was a supervisor and regardless whether his actions could be termed *quid pro quo*[2] or hostile environment[3] sexual harassment, the company took prompt remedial action that absolved it of liability. Indest appealed, and the EEOC has filed an amicus brief.

## II. STANDARD OF REVIEW

A district court's ruling on a Fed.R.Civ.P. 12(b)(6) motion to dismiss is reviewed *de novo*. *Barrientos v. Reliance Standard Life Ins. Co.*, 911 F.2d 1115, 1116 (5th Cir.1990). Additionally, "[w]e must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. We may not look beyond the pleadings. A dismissal will not be affirmed if the allegations support relief on any possible theory." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

The grant of summary judgment is reviewed *de novo*, applying the same standards as the district court. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir.1995). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The movant must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant does so, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Evidence is viewed in the light most favorable to the nonmoving party. *See Duffy*, 44 F.3d at 312.

---

2. *See, e.g., Webb v. Cardiothoracic Assocs. of North Tx.*, 139 F.3d 532, 539–40 (5th Cir.1998).

3. *See, e.g., Jones v. Flagship Int'l*, 793 F.2d 714, 719–21 (5th Cir.1986).

## III. ANALYSIS

### A. Individual Liability Under Title VII.

Arnaudet sought dismissal for failure to state a claim against him pursuant to Fed. R.Civ.P. 12(b)(6). The district court applied settled Fifth Circuit law in holding that employees may not be sued for damages in their individual capacities. The court also reasoned that it would be redundant for Indest to sue both Arnaudet in his official capacity and Freeman, because Freeman would bear responsibility for the liability of either party through Title VII's incorporation of the principle of vicarious liability.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). While Title VII defines the term employer to include "any agent" of an employer, *id.* § 2000e(b), this circuit does not interpret the statute as imposing individual liability for such a claim. *See Pfau v. Reed,* 125 F.3d 927, 935–36 (5th Cir.1997).[4] Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII. *Grant v. Lone Star Co.,* 21 F.3d 649, 652 (5th Cir.1994); *see also Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th

Cir.1993). Thus, a Title VII suit against an employee is actually a suit against the corporation.

■ This court has also concluded that "outside of an action against an officer personally, a plaintiff does not have an action against both the corporation and its officer in an official capacity." *Sims v. Jefferson Downs Racing Assoc., Inc.,* 778 F.2d 1068, 1081 (5th Cir.1985) (suit brought under 42 U.S.C. § 1983). Here, the district court dismissed Arnaudet as a defendant based on the logic of *Sims* and an Eastern District of Louisiana case, *Allen v. Tulane Univ.,* No. CIV.A.92–4070, 1993 WL 459949 (E.D.La. Nov.2, 1993), which specifically found that the "Plaintiff is not entitled to maintain an action against both a corporation and its agent in an official capacity [in a Title VII action] because effectively the corporation could be held liable twice for the same act." *Allen,* 1993 WL 459949, at *4.[5] We agree that in accordance with *Sims,* a party may not maintain a suit against both an employer and its agent under Title VII.

### B. Employer Liability for the Acts of Employees Under Title VII.

The district court held that Indest had the burden of proving that Freeman knew or should have known of the alleged harassment and failed to take prompt remedial action.[6]

---

4. *See also Wathen v. General Elect. Co.,* 115 F.3d 400, 404 (6th Cir.1997) (noting that a majority of the circuits considering suits against the agent of an employer "have held that an employee/supervisor, who does not otherwise qualify as an 'employer,' cannot be held individually liable under Title VII and similar statutory schemes"); *Grant v. Lone Star Co.,* 21 F.3d 649, 651 (5th Cir.1994). ("We have refused to impose liability for backpay on individual public employees. [The plaintiff] offers no persuasive argument why Congress would not have intended to protect private employees, as well, from individual title VII liability."); *Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir.1990) (holding that the doctrine of qualified immunity does not protect a government official who is sued in an official capacity under Title VII because Title VII does not impose personal liability).

5. Aside from the instant case and *Allen,* several other cases in the Eastern District of Louisiana have dismissed claims against supervisors in their official capacities when the plaintiff also

sued the corporation under Title VII. *See Davillier v. State through Dep't. of Health and Hosps.,* No.CIV.A.96–4169, 1997 WL 276091, at *1 (E.D.La., May 22, 1997); *Oubre v. Entergy Operations, Inc.,* No.CIV.A.95–3168, 1996 WL 28508, at *2 (E.D.La. Jan.22, 1996), *aff'd,* 102 F.3d 551 (5th Cir.1996) (per curiam), *rev'd on other grounds,* 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998); *Minshew v. Brown,* No. 95–2507, 1996 WL 3916, at *2 (E.D.La. Jan.4, 1996). *But see Douglas v. DynMcDermott Petroleum Operations Co.,* No.CIV.A. 95–1967, 1996 WL 365671, at *4 (E.D.La. July 2, 1996) (permitting suit against both supervisor and company in a Title VII suit despite objections raised by the defendants), *rev'd on other grounds,* 144 F.3d 364 (5th Cir.1998).

6. The district court relied upon *Sims v. Brown & Root Indus. Servs., Inc.,* 889 F.Supp. 920 (W.D.La.1995), *aff'd,* 78 F.3d 581 (5th Cir.1996), which held that a plaintiff must prove the lack of prompt and remedial action to maintain either a

Based on Freeman's prompt, humiliating punishment of Arnaudet, including verbal and written reprimands, suspension without pay for a week, and banishment from his own sales meeting, and based upon the complete cessation of harassment following this incident, the district court concluded that Freeman's actions were sufficiently swift and effective to preclude corporate vicarious liability for Arnaudet's conduct.

Before this year's trilogy of Supreme Court Title VII cases appeared, Indest and the EEOC advocated imposing strict liability on Freeman by arguing that the "defense" of prompt remedial action does not apply in two situations: 1) when a plaintiff alleges a *quid pro quo* claim arising from the actions of a supervisor or other manager who relies on delegated authority, and 2) when the alleged harasser in a hostile work environment case is a supervisor or manager who used actual or apparent authority, or was merely aided by the existence of an agency relationship, in committing the harassment.

The recent Supreme Court decisions guide our analysis. They shed light on what constitutes an actionable claim for a sexually hostile working environment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). They resolve the circuit split over the standard of employer liability for sexual harassment perpetrated by a supervisor. *See Faragher*, — U.S. —, 118 S.Ct. 2275, 141 L.Ed.2d 662; *Ellerth*, — U.S. —, 118 S.Ct. 2257, 141 L.Ed.2d 633. And they reaffirm that *Meritor*'s rejection of automatic liability for employers, although modified, remains a fundamental limit on Title VII liability. *Faragher*, — U.S. at — — —, 118 S.Ct. at 2285–86; *Ellerth*, — U.S. at — — —, 118 S.Ct. at 2268–70.

In *Oncale*, the Court principally decided that Title VII applies to claims of same-sex harassment. But the Court also emphasized that Title VII is not a general civility code for the American workplace:

We have always regarded that requirement [of objectively offensive, severe and pervasive conduct] as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory "conditions of employment."

Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale*, 118 S.Ct. at 1003. In *Faragher*, the Court concluded a discussion of the demanding standards for a sexual hostile environment claim by stating:

We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the courts of appeals have heeded this view.

— U.S. at —, 118 S.Ct. at 2284. *Faragher* cited approvingly a Fifth Circuit case in which the utterance of an offensive ethnic or racial slur did not sufficiently alter the terms and conditions of employment to violate Title VII. *Id.* at 2283 (citing *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir.1971)). *Faragher* repeated the holding in *Harris* [7] that:

in order to be actionable under the statute, a sexually objectional environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so. We directed courts to determine whether an environment is sufficiently abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

hostile work environment or *quid pro quo* sexual harassment claim. *See id.* at 925. The *Sims* decision also stated that this element must be proved even when the alleged harasser is the employee's supervisor. *See id.* at 927. This court affirmed *Sims* in an unpublished opinion,

which, according to our court's policy, is not a precedential decision.

**7.** *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993).

interferes with an employee's work performance."

*Faragher,* —— U.S. at ——, 118 S.Ct. at 2283 (citations omitted). Finally, *Ellerth* underscored that:

> For any sexual harassment [apart from a tangible adverse] employment decision to be actionable, however, the conduct must be severe or pervasive.

*Ellerth,* 118 S.Ct. at 2265.

██ Taken together, these cases hold that sexual harassment which does not culminate in an adverse employment decision must, to create a hostile work environment, be severe or pervasive. Incidental, occasional or merely playful sexual utterances will rarely poison the employee's working conditions to the extent demanded for liability. Discourtesy or rudeness, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'" *Faragher,* —— U.S. at ——, 118 S.Ct. at 2283. All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment. *See, e.g., Faragher,* —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662; *Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633; *Oncale,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201; *Harris,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Sav. Bank, FSB v. Vinson* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The extreme facts recited in those cases highlight the intensity of the objectionable conduct that must be present in order to constitute an actionable hostile environment claim.[8]

In light of this demanding standard, it is difficult to conclude that the conduct to which Indest was briefly subjected created a sexually abusive overall working environment. This is not to say that Arnaudet behaved like a gentleman or a responsible company officer. On the contrary, his crude remarks and implied threat deserved censure. As far as the entire context of Indest's employment with Freeman is concerned, however, Arnaudet's misbehavior was neither severe nor pervasive. She only complained about working with him on one occasion. His vulgar remarks and innuendos (about his own anatomy) were no more offensive than sexual jokes regularly told on major network television programs. Significantly, Arnaudet never touched Indest. His "threat" to Indest to "prove herself to him" was far more ambiguous than those uttered in *Ellerth.*[9] Not only was it hollow, because Indest knew and invoked the company policy against sexual harassment, but it invited the company's immediate reprisal upon Arnaudet himself.

██ *Whether Indest was subjected to a sexually hostile working environment might be a close question on this summary judgment record, but it is a question that we do not need to address, because there is another basis on which Indest's claim falls short.* Indest cannot establish a basis for Freeman's liability as her employer. The Supreme Court's decisions in *Ellerth* and *Faragher* articulate and recapitulate some, but not all, standards for employer liability. First, the cases distinguish between supervisory conduct that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment," and hostile environment conduct which does not have this effect. *Ellerth,* —— U.S. at ——, 118 S.Ct. at 2270. When the harassment result-

---

8. What constitutes an actionable claim for a sexual hostile working environment is a fact-sensitive determination, but the Supreme Court's decisions strongly suggest that such allegations are not invariably to be resolved by the jury. According to the Court, this claim is undergirded by requirements of severity and pervasiveness, viewed in the plaintiff's entire employment context from an objective standpoint. Cases will vary widely, as there is a continuum of sexually-categorized behavior ranging from the use of diminutives like "sweetie-pie" on one extreme to physical assault on the other, and the comming-

ling of particular conduct, words and working environments may form a complex stew. But claims of non-severe, non-pervasive harassment are excluded from Title VII. Motions for judgment as a matter of law can police the baseline for hostile environment claims.

9. *Ellerth,* —— U.S. at ——, 118 S.Ct. at 2262 (noting that supervisor told employee that he could make her life at the company "very hard or very easy").

ed in a tangible adverse employment decision, it is actionable under Title VII because it has *ipso facto* changed the terms and conditions of the plaintiff's work. *See id.* This case involved only alleged hostile environment conduct under the Court's new distinction.

Second, the Court articulated a test of liability:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor ... When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Id.* (citation omitted).

Further, in *Faragher*, the Court approved the "myriad cases" in which lower courts have held employers liable where the employer, or its high-level officials, had actual knowledge of harassing action by subordinates or co-workers and did nothing to stop it. —— U.S. at——, 118 S.Ct. at 2284. The Court also reaffirmed the cases that impose liability on the employer for negligence, where it knew of should have known of sexual harassment by an employee's co-workers and failed to stop it. *See id.* at 2285. The Court explained that liability may be fastened on an employer for the acts of its official who is "indisputably within that class ... who may be treated as the organization's proxy," like the corporate president in *Harris*. *Faragher*, —— U.S. at ——, 118 S.Ct. at 2284. While *Ellerth* and *Faragher* do not delineate the difference between a supervisor and co-worker of the plaintiff employee, they state that vicarious liability will result from the conduct of "a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, —— U.S. at ——, 118 S.Ct. at 2293; *Ellerth*, —— U.S. at ——, 118 S.Ct. at 2270.[10]

*Ellerth and Faragher* do not, however, directly speak to the circumstances before us, a case in which the plaintiff quickly resorted to Freeman's policy and grievance procedure against sexual harassment, and the employer took prompt remedial action. The Supreme Court cases both involve complaints of longstanding supervisor misbehavior, and the plaintiffs either never utilized or claimed not to be aware of the company policies. But for purposes of imposing vicarious liability, a case presenting only an incipient hostile environment corrected by prompt remedial action should be distinct from a case in which a company was never called upon to react to a supervisor's protracted or extremely severe acts that created a hostile environment. Although the *Ellerth/Faragher* standard, which imposes vicarious liability subject to an employer's two-prong affirmative defense, does not control, it informs the principles determinative of this case.

First, when a plaintiff promptly complains about a supervisor's inappropriate sexual actions, she can thwart the creation of a hostile work environment. To the extent redress is sought, is justified, and is adequately provided by the company, the complained-of incidents will not likely have become severe or pervasive enough to create an actionable Title VII claim. This result effectuates the purpose of Title VII, which cannot guarantee civility in the American workplace but, at its best, inspires prophylactic measures to deter unwanted sexual harassment. By promptly invoking a company's grievance procedure, a plaintiff. has received the benefit Title VII was meant to confer. In such cases, an actionable hostile environment claim will rarely if ever have matured.

---

10. Freeman states that Arnaudet was not, as a matter of law, Indest's supervisor, because Indest reported to and received employee evaluations directly from other company personnel. Because this point was not briefed, we do not consider it.

Second, the company's swift response to the plaintiff's complaint should have consequences for its vicarious liability exposure precisely because the company forestalled the creation of a hostile environment. In cases like *Ellerth*, by contrast, the plaintiff's failure or delay in invoking anti-harassment procedures may suggest that a company lacked vigilance or determination to enforce them or that it appeared to turn a blind eye toward sexual harassment. The *Ellerth/Faragher* test more cautiously exempts an employer from liability in the latter situation than is appropriate when a company has promptly reacted to a harassment claim and averted further distress.

A third, more fundamental reason also justifies distinguishing the *Ellerth/Faragher* test from the case before us. The Supreme Court felt obliged to square its new limited vicarious liability standard "with *Meritor*'s holding that an employer is not 'automatically' liable for harassment by a supervisor who creates" a sexually hostile working environment. *Faragher*, ── U.S. at ──, 118 S.Ct. at 2278. *Meritor* rejected imposing strict Title VII liability on employers for such claims. 477 U.S. at 72, 106 S.Ct. at 2408. *Meritor* was left in place in the Court's recent cases because of *stare decisis* and because, as the Court noted, Congress conspicuously left *Meritor* intact even as it modified other aspects of Title VII law in 1991. Most important, the Court acknowledged that *Meritor* furthers the twin deterrent and compensatory aims of Title VII. As *Faragher* put it:

> It would therefore implement clear statutory policy and complement the Government's Title VII enforcement efforts to recognize the employer's affirmative obligation to prevent violations and give credit here to employers who make reasonable efforts to discharge their duty. Indeed, a theory of vicarious liability for misuse of supervisory power would be at odds with

the statutory policy if it failed to provide employers with some such incentive. ── U.S. at ──, 118 S.Ct. at 2292.

■ Imposing vicarious liability on an employer for a supervisor's "hostile environment" actions despite its swift and appropriate remedial response to the victim's complaint would thus undermine not only *Meritor* but Title VII's deterrent policy. Vicarious liability would amount to strict liability even though the plaintiff had suffered neither a severe and pervasive change in her working conditions nor any adverse employment action. A holding of vicarious liability would conflict with cases, specifically approved by the Court, in which an employer's liability for co-worker sexual harassment is governed by a negligence standard, and the employer is liable only if it knew or should have known and failed to take proper remedial steps. *See Faragher*, ── U.S. at ── ── ──, 118 S.Ct. at 2285-86. A standard imposing vicarious liability notwithstanding the employer's having nipped a hostile environment in the bud would also conflict with the premise of *Ellerth/Faragher*, founded in agency law, that a supervisor who creates a hostile environment is aided by his agency status with the employer in doing so. *See Faragher*, ── U.S. ──, ──, 118 S.Ct. 2285, 2290. Where the company, on hearing a plaintiff's complaint about inappropriate sexual behavior, moves promptly to investigate and stop the harassment, it eradicates any semblance of authority the harasser might otherwise have possessed.[11]

Finally, *Faragher*'s discussion of the avoidable consequences doctrine and an employee's duty to mitigate damages supports relieving the employer from liability in circumstances like those before us. *Faragher* explains the relevance of these concepts while discussing the prong of the affirmative defense that requires an employer to prove the employee's "unreasonable" failure to take advantage of company policies to avoid sexual harassment:

> the Court goes on to balance vicarious liability with the employer's affirmative defense on the facts before it, we do not believe agency law implies vicarious liability in the present case.

**11.** *Faragher* emphasized that agency law principles furnish no more than a starting point in analysis of Title VII employer liability. ── U.S. at ── & n. 3, 118 S.Ct. at 2290 & n. 3. While

If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided.

*Id.* at 2292. *Faragher* implies that a plaintiff should not wait as long as it usually takes for a sexually hostile working environment to develop when the company has an effective grievance mechanism. If the plaintiff complains promptly, the then-incidental misbehavior can be stymied before it erupts into a hostile environment, and no actionable Title VII violation will have occurred.

█ Applying the foregoing analysis to Indest's case, we hold that because she promptly complained of Arnaudet's harassing conduct, and because the company promptly responded, disciplined Arnaudet appropriately and stopped the harassment, the district court properly granted judgment as a matter of law to Freeman. Even if a hostile work environment claim had been stated, which is dubious, Freeman's prompt remedial response relieves it of Title VII vicarious liability.

C. Employer Liability for Failing to Prevent Sexual Harassment

In a final effort to find a genuine issue of material fact, Indest and EEOC assert that Title VII liability may be imposed on Freeman because of its inadequate discipline of Arnaudet after a previous complaint involving another Freeman employee, "Jane Doe." There is insufficient evidence in the record, however, from which the details of the Jane Doe incident can be ascertained or compared with this case. We find no merit in these contentions.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

