**GULF STATES TOYOTA, INC., Appellant,**

v.

**Bridgette MORGAN, Appellee.**

No. 01–00–01251–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 24, 2002.

William John Bux, Locke, Liddell & Sapp, LLP, Houston, TX, for Appellant.

Syd Phillips, Houston, TX, for Appellee.

Panel consists of Justices MIRABAL, NUCHIA, and PRICE.*

## OPINION

SAM NUCHIA, Justice.

Appellant, Gulf States Toyota, Inc., appeals the trial court's judgment on a jury verdict finding that appellant subjected ap-

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

pellee, Bridgette Morgan, to sexual harassment and awarding $7,500 in compensatory damages and $25,000 in attorney's fees. We reverse the judgment of the trial court and render judgment that Morgan take nothing.

## BACKGROUND

In June 1998, Bridgette Morgan, who was employed by Wingfoot Enterprises, Inc. d/b/a Tandem Staffing ("Tandem"), an employment agency placing temporary workers with its clients, was assigned to work for Gulf States Toyota. Morgan was assigned to work at the exit end of a carwash, driving the cars from the carwash to another location. Morgan testified that, on her first day at work, a co-worker, Simon Zamarron, made improper comments to her. Morgan did not report the incident to anyone at Gulf States Toyota and did not have any further problems with Zamarron until August 5, 1998.

On August 5, Zamarron, a permanent employee of Gulf States Toyota, replaced another worker at the exit end of the carwash. Morgan testified that, on that date, Zamarron asked her if she wanted to go out and have a beer with him, and she told him she did not and that she had been telling him she did not. She said he also rubbed her breast and said, "You got any chocolate milk?" She testified that he said other things, but she could not remember the exact words. She said that, after he put his hand on her breast, she "started cussing him out" and he backed off. She continued working with him through the morning and did not report the incident to her supervisor or anyone else at Gulf States Toyota. She testified that, in the afternoon, as she went to sit in a car, "[h]e rubbed his hands underneath my behind." She again yelled at him to stop, and she did not have any more trouble with him that day. She did not complain to anyone

at the company, nor did she let Tandem know that she was having a problem.

On August 6, Morgan reported to work and began working at the exit end of the carwash. Zamarron was also working at the exit end. Morgan testified that Zamarron began "talking that way again." She did not remember the exact words, but they were "[s]exual type things, inappropriate words." He did not touch her on August 6. She decided to make a complaint and went to Victor, her supervisor. She told Victor about the touching and inappropriate comments and asked to be moved. Victor told her that Zamarron's behavior violated the company's sexual harassment policy and it would not be tolerated. He also told her that she did not have to move and that if anyone was moved, it would be Zamarron. Victor talked to Zamarron, then observed Zamarron and Morgan for the remainder of the day. Morgan did not have any further problem with Zamarron on that day. After work, she notified Tandem of her complaint.

On August 7—a Friday—Zamarron was assigned to the other end of the carwash, approximately 100 yards from Morgan's position. Morgan had no complaints about anything Zamarron did on August 7. That afternoon, after completing her work, Morgan met with the human resources manager at Tandem and made a written statement regarding her complaint of sexual harassment. On Monday, August 10, Morgan reported to work and provided a copy of her written statement to Gulf States Toyota.

Tracy Chamblee, Gulf States Toyota's human resources manager, had been on vacation on August 6 and 7. When she returned to the office on August 10, the senior manager of operations informed her of Morgan's complaint. They talked to Victor to find out more about the com-

plaint; then Chamblee called Morgan to her office to discuss the problem. She gave Morgan a copy of the sexual harassment policy and told Morgan she would conduct an investigation into the allegations. Chamblee asked Morgan if Zamarron had been assigned to a different work area, and Morgan said he had. Chamblee asked Morgan if she had any other complaints, and Morgan said she did not. Chamblee told Morgan that if she had any other complaints, she should report them to Chamblee.

Morgan testified that she did not have any problem with Zamarron on August 10 or August 11. She also testified that he was smirking at her, although it is unclear when this smirking occurred. She did not complain about Zamarron's smirking to Chamblee, Victor, or anyone else at the company. Morgan did not report to work on August 12, 13, 14, or 17.

Chamblee began conducting her investigation on August 10. Over the next several days, she talked to 10 co-workers, including leads given to her by Morgan regarding who might have witnessed any of the events of which Morgan complained. Chamblee was unable to find any witnesses who could confirm any of Morgan's complaints; however, some of the women said they knew of inappropriate remarks made by Zamarron to others, although there had been no previous complaints about Zamarron. When Chamblee confronted Zamarron with the allegations made by Morgan and by others concerning inappropriate comments, he denied them.

Because Morgan was not at work from August 12 through August 17, Chamblee was unable to meet with Morgan a second time until August 18, when Morgan returned to work. Chamblee testified that, when she asked Morgan if her four-day absence had anything to do with the inves-

tigation, Morgan said it did not. Chamblee told Morgan that the investigation was nearly completed. Morgan worked the rest of August 18 without incident.

On Wednesday, August 19, Morgan came to Chamblee's office door very upset and said she needed to talk to Chamblee. Morgan told Chamblee that Zamarron had been sweeping the carwash, had worked his way down to her end, and had then grabbed his crotch and shaken it while looking at her. Morgan got in one of the cars and drove away from the area; then she went to Chamblee's office to make her complaint. Because Morgan was clearly upset, Chamblee told her to take the rest of the day off, with pay, and not to return until Friday, by which time the investigation would be completed. Chamblee then interviewed two employees who were working in the same area as Zamarron to see if they had seen anything to corroborate Morgan's complaint. They had not. Chamblee then called Zamarron to her office. She told him of the new complaint and said that, although she could not directly verify Morgan's complaints, she had learned of other inappropriate comments made to other female employees and believed that he had behaved inappropriately with Morgan.

On that same day, Chamblee gave Zamarron a final written warning, told him that he would be terminated if there was any other violation, and suspended him without pay for five days. He was also reassigned to another job in a building removed from the area in which Morgan worked. Chamblee testified that Gulf States Toyota considered firing Zamarron, but did not because they had never received a previous complaint and he had a good performance record.

When Morgan returned to work on August 21, Chamblee affirmed that Morgan would be paid for both Wednesday and

Thursday, August 19 and 20. Chamblee told Morgan that Zamarron had been disciplined, transferred to another building, and told to leave her alone. She also told Morgan that there would be no reason for Morgan and Zamarron to come into contact unless they happened to be in the employee parking lot at the same time. Chamblee told Morgan that Morgan would be working in the final check area, a job that Morgan wanted. Morgan returned to her work for the rest of the day. Morgan did not work for Gulf States Toyota after August 21, 1998.

Morgan sued Gulf States Toyota and Tandem, alleging that (1) Gulf States Toyota subjected her to sexual harassment; (2) Gulf States Toyota retaliated against her by telling Tandem not to assign her to work for the company; and (3) Tandem retaliated against her by discharging her on August 21, 1998. The jury found in favor of both defendants on the retaliation claims, found in favor of Morgan on the sexual harassment claim, and awarded compensatory damages and attorney's fees.

## DISCUSSION

In its sole issue, Gulf States Toyota contends the evidence is legally and factually insufficient to support the jury's finding that Morgan was sexually harassed by Gulf States Toyota in violation of the Texas Commission on Human Rights Act.[1] We first consider the issue of legal sufficiency.

### Standard of Review

■ In reviewing legal sufficiency, we consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex.App.-Houston [1st Dist.] 1993, writ denied). If there is any evidence of probative force to support the finding, *i.e.*, more than a mere scintilla, we will overrule the issue. *Id.* "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970). However, if the evidence supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is some evidence. *Kindred*, 650 S.W.2d at 63.

### Sexual Harassment

■ To establish a claim for sexual harassment by a co-worker, a plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew, or should have known, of the harassment and did not take prompt, remedial action. *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *see also Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir.1999).[2] Gulf States Toyota does not challenge the first three elements, but contends

1. Tex. Lab.Code Ann. §§ 21.001–.556 (Vernon 1996 & Supp.2002).

2. Because one of the stated purposes of the Texas Commission on Human Rights Act is "to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964" and its amendments, we look to federal precedent for guidance when interpreting the Act. *See* Tex. Lab.Code Ann. § 21.001(1) (Vernon 1996); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999).

that Morgan did not establish elements four and five. We consider only the fifth element.

### Prompt, Remedial Action

Gulf States Toyota first contends that there is no evidence to establish that it did not take prompt, remedial action once it knew or should have known of the inappropriate conduct. Gulf States Toyota argues that the action taken by the supervisor on August 6, the lack of any harassment between August 7 and August 19, and the disciplinary action after the harassment on August 19 established that the employer's action was both prompt and remedial.

Morgan responds that the action was neither prompt nor remedial. She contends that Gulf States Toyota did not (1) adopt a sexual harassment policy and communicate it to all employees, (2) immediately separate her from Zamarron, (3) sufficiently remove Zamarron from her work place during the investigation, (4) provide remedial training to Zamarron, (5) ensure that she could continue in her normal work area free of harassment, or (6) provide a sufficient penalty to Zamarron.

Gulf States Toyota had a sexual harassment policy, which was admitted into evidence. Morgan, an employee of Tandem, received a copy of Tandem's sexual harassment policy, which she signed as having received. The policy stated that she should notify Tandem of any sexual harassment.

■ An employer is not required to impose the most serious sanction available to punish a sexual harassment offender, particularly when it is the employee's first offense. *See Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992), *aff'd*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Rather, an employer must take prompt, remedial action. *See Skidmore*, 188 F.3d at 615.

■ Prompt, remedial action is action that is reasonably calculated to end the harassment.[3] *Id.*

> What is appropriate remedial action will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps.... [N]ot every response by an employer will be sufficient to discharge its legal duty. Rather the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not "reasonably calculated" to halt the harassment.

*Id.* at 615–16 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989)). It was Morgan's burden to establish that Gulf States Toyota did not take prompt, remedial action. *See id.* at 616.

■ The Fifth Circuit Court of Appeals has often found an employer's response to a complaint of sexual harassment to constitute prompt, remedial action as a matter of law. *Id.* at 616 (citing *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir.1996) (listing cases)). The Fifth Circuit has considered such factors as whether the offending behavior stopped and whether the plaintiff quit the job before the remedy could have an effect. *Id.; Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309–10 (5th Cir.1987). In *Skidmore*, the employer moved Skidmore to a different location temporarily, then moved her back, but put her and the alleged harasser on different shifts. *Id.* The employer did not investigate the complaint, reprimand the offender, or make

---

**3.** The jury charge instructed the jury that "'prompt, remedial action' requires an employer to take reasonably calculated steps to end the harassment."

follow-up inquiries to determine whether the harassment had stopped. *Skidmore*, 188 F.3d at 616. Nevertheless, Skidmore did not make any further complaints, and the Fifth Circuit found that the employer took prompt, remedial action as a matter of law. *Id.*

In *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir.1999), Arnaudet, a vice-president of Freeman, made crude, sexual comments and gestures to Indest while they were working at a convention. *Id.* at 260. On the third day of the convention, Indest informed Arnaudet that his comments and gestures were sexual harassment, and he responded by telling her not to threaten him, disparaging her abilities as an employee, and saying they would work at another convention together. *Id.* She became upset, started crying, and took off work the next day. *Id.* There were no further incidents of harassment. *Id.* On the fifth day of the convention, Indest reported the incidents to her director, DiMaggio, and to the branch office manager, Hagstette. *Id.* Hagstette reported the complaint to the human resources director, Camp, and DiMaggio told Indest to talk to Camp, which she did approximately one week later. *Id.* Camp investigated the complaint and reported it to the president, Don Freeman. *Id.* Freeman issued a verbal and written reprimand to Arnaudet and informed Indest of the action. *Id.* Several days later, Indest sent a letter to Camp, stating that she intended to file an EEOC charge because she feared retaliation. *Id.* at 261. About two weeks later, a human resources employee assured Indest that there would be no retaliation and Indest was informed that Arnaudet would be suspended seven days without pay and would be prohibited from attending an important annual meeting. *Id.* In determining that the employer did not have vicarious liability for Arnaudet's actions, the Fifth Circuit stated that "the

employer took prompt remedial action." *Id.* at 265.

In *Dornhecker*, 828 F.2d at 307, after enduring two days of inappropriate touching and crude sexual remarks during an out-of-town trip, Dornhecker complained, and the president of the company told her she would not have to work with the alleged harasser after that trip. *Id.* at 308. Dornhecker resigned shortly after talking to the president. *Id.* at 308–09. The Fifth Circuit characterized the employer's response, which occurred approximately 12 hours after Dornhecker's complaint, as "unusually prompt." *Id.* at 309.

In the present case, it is undisputed that Gulf States Toyota neither knew nor should have known of Zamarron's sexual harassment until August 6. After Morgan's first complaint on August 6, a supervisor took immediate action by speaking with Zamarron and observing Morgan and Zamarron at work the remainder of the day. On August 7, the supervisor moved Zamarron to a work station farther away from Morgan. On August 10, Morgan told Chamblee that she had no other complaints. Morgan testified that there were no incidents on August 10, 11, or 18. In the meantime, Chamblee was investigating the matter, although the investigation was delayed by Morgan's absence on August 12 through 17. When Morgan returned to work on August 18, Chamblee spoke with her about the investigation, and Morgan again stated that there had been no further incidents. On August 19, when Morgan reported a second incident, Chamblee took immediate action by verbally reprimanding Zamarron, placing a written reprimand in his personnel file, telling him another incident could result in termination, and suspending him without pay for five days. After this disciplinary action, Morgan did not return to work for a

sufficient time to see whether the action did, in fact, stop the harassment.

We hold that, as a matter of law, Gulf States Toyota's responses to Morgan's complaints on August 6 and August 19 were prompt, remedial actions and were reasonably calculated to halt the harassment.

In light of our holding, we need not reach Gulf States Toyota's factual sufficiency argument. We also need not reach the issue of whether there was legally or factually sufficient evidence that the sexual harassment affected a term, condition, or privilege of employment. *See Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 299 (5th Cir.2001).

We sustain Gulf States Toyota's challenge to the legal sufficiency of the evidence that it failed to take prompt, remedial action once it knew or should have known of the sexual harassment, reverse the judgment, and render judgment that Morgan take nothing.