In The

Court of Appeals

For The

First District of Texas

____________

NO. 01-00-01251-CV

____________


GULF STATES TOYOTA, INC., Appellant


V.


BRIDGETTE MORGAN, Appellee






On Appeal from the 165th District Court

Harris County, Texas

Trial Court Cause No. 2000-08322






O P I N I O N

 Appellant, Gulf States Toyota, Inc., appeals the trial court's judgment on a jury verdict
finding that appellant subjected appellee, Bridgette Morgan, to sexual harassment and
awarding $7,500 in compensatory damages and $25,000 in attorney's fees. We reverse the
judgment of the trial court and render judgment that Morgan take nothing.


BACKGROUND


 In June 1998, Bridgette Morgan, who was employed by Wingfoot Enterprises, Inc.
d/b/a Tandem Staffing ("Tandem"), an employment agency placing temporary workers with
its clients, was assigned to work for Gulf States Toyota. Morgan was assigned to work at the
exit end of a carwash, driving the cars from the carwash to another location. Morgan
testified that, on her first day at work, a co-worker, Simon Zamarron, made improper
comments to her. Morgan did not report the incident to anyone at Gulf States Toyota and did
not have any further problems with Zamarron until August 5, 1998. 

 On August 5, Zamarron, a permanent employee of Gulf States Toyota, replaced
another worker at the exit end of the carwash. Morgan testified that, on that date, Zamarron
asked her if she wanted to go out and have a beer with him, and she told him she did not and
that she had been telling him she did not. She said he also rubbed her breast and said, "You
got any chocolate milk?" She testified that he said other things, but she could not remember
the exact words. She said that, after he put his hand on her breast, she "started cussing him
out" and he backed off. She continued working with him through the morning and did not
report the incident to her supervisor or anyone else at Gulf States Toyota. She testified that,
in the afternoon, as she went to sit in a car, "[h]e rubbed his hands underneath my behind." 
She again yelled at him to stop, and she did not have any more trouble with him that day. 
She did not complain to anyone at the company, nor did she let Tandem know that she was
having a problem. 

 On August 6, Morgan reported to work and began working at the exit end of the
carwash. Zamarron was also working at the exit end. Morgan testified that Zamarron began
"talking that way again." She did not remember the exact words, but they were "[s]exual
type things, inappropriate words." He did not touch her on August 6. She decided to make
a complaint and went to Victor, her supervisor. She told Victor about the touching and
inappropriate comments and asked to be moved. Victor told her that Zamarron's behavior
violated the company's sexual harassment policy and it would not be tolerated. He also told
her that she did not have to move and that if anyone was moved, it would be Zamarron. 
Victor talked to Zamarron, then observed Zamarron and Morgan for the remainder of the day. 
Morgan did not have any further problem with Zamarron on that day. After work, she
notified Tandem of her complaint. 

 On August 7--a Friday--Zamarron was assigned to the other end of the carwash,
approximately 100 yards from Morgan's position. Morgan had no complaints about anything
Zamarron did on August 7. That afternoon, after completing her work, Morgan met with the
human resources manager at Tandem and made a written statement regarding her complaint
of sexual harassment. On Monday, August 10, Morgan reported to work and provided a copy
of her written statement to Gulf States Toyota. 

 Tracy Chamblee, Gulf States Toyota's human resources manager, had been on
vacation on August 6 and 7. When she returned to the office on August 10, the senior
manager of operations informed her of Morgan's complaint. They talked to Victor to find
out more about the complaint; then Chamblee called Morgan to her office to discuss the
problem. She gave Morgan a copy of the sexual harassment policy and told Morgan she
would conduct an investigation into the allegations. Chamblee asked Morgan if Zamarron
had been assigned to a different work area, and Morgan said he had. Chamblee asked
Morgan if she had any other complaints, and Morgan said she did not. Chamblee told
Morgan that if she had any other complaints, she should report them to Chamblee. 

 Morgan testified that she did not have any problem with Zamarron on August 10 or
August 11. She also testified that he was smirking at her, although it is unclear when this
smirking occurred. She did not complain about Zamarron's smirking to Chamblee, Victor,
or anyone else at the company. Morgan did not report to work on August 12, 13, 14, or 17. 

 Chamblee began conducting her investigation on August 10. Over the next several
days, she talked to 10 co-workers, including leads given to her by Morgan regarding who
might have witnessed any of the events of which Morgan complained. Chamblee was unable
to find any witnesses who could confirm any of Morgan's complaints; however, some of the
women said they knew of inappropriate remarks made by Zamarron to others, although there
had been no previous complaints about Zamarron. When Chamblee confronted Zamarron
with the allegations made by Morgan and by others concerning inappropriate comments, he
denied them. 

 Because Morgan was not at work from August 12 through August 17, Chamblee was
unable to meet with Morgan a second time until August 18, when Morgan returned to work. 
Chamblee testified that, when she asked Morgan if her four-day absence had anything to do
with the investigation, Morgan said it did not. Chamblee told Morgan that the investigation
was nearly completed. Morgan worked the rest of August 18 without incident. 

 On Wednesday, August 19, Morgan came to Chamblee's office door very upset and
said she needed to talk to Chamblee. Morgan told Chamblee that Zamarron had been
sweeping the carwash, had worked his way down to her end, and had then grabbed his crotch
and shaken it while looking at her. Morgan got in one of the cars and drove away from the
area; then she went to Chamblee's office to make her complaint. Because Morgan was
clearly upset, Chamblee told her to take the rest of the day off, with pay, and not to return
until Friday, by which time the investigation would be completed. Chamblee then
interviewed two employees who were working in the same area as Zamarron to see if they
had seen anything to corroborate Morgan's complaint. They had not. Chamblee then called
Zamarron to her office. She told him of the new complaint and said that, although she could
not directly verify Morgan's complaints, she had learned of other inappropriate comments
made to other female employees and believed that he had behaved inappropriately with
Morgan. 

 On that same day, Chamblee gave Zamarron a final written warning, told him that he
would be terminated if there was any other violation, and suspended him without pay for five
days. He was also reassigned to another job in a building removed from the area in which
Morgan worked. Chamblee testified that Gulf States Toyota considered firing Zamarron, but
did not because they had never received a previous complaint and he had a good performance
record. 

 When Morgan returned to work on August 21, Chamblee affirmed that Morgan would
be paid for both Wednesday and Thursday, August 19 and 20. Chamblee told Morgan that
Zamarron had been disciplined, transferred to another building, and told to leave her alone. 
She also told Morgan that there would be no reason for Morgan and Zamarron to come into
contact unless they happened to be in the employee parking lot at the same time. Chamblee
told Morgan that Morgan would be working in the final check area, a job that Morgan
wanted. Morgan returned to her work for the rest of the day. Morgan did not work for Gulf
States Toyota after August 21, 1998. 

 Morgan sued Gulf States Toyota and Tandem, alleging that (1) Gulf States Toyota 
subjected her to sexual harassment; (2) Gulf States Toyota retaliated against her by telling
Tandem not to assign her to work for the company; and (3) Tandem retaliated against her by
discharging her on August 21, 1998. The jury found in favor of both defendants on the
retaliation claims, found in favor of Morgan on the sexual harassment claim, and awarded
compensatory damages and attorney's fees. 

DISCUSSION


 In its sole issue, Gulf States Toyota contends the evidence is legally and factually
insufficient to support the jury's finding that Morgan was sexually harassed by Gulf States
Toyota in violation of the Texas Commission on Human Rights Act. (1) We first consider the
issue of legal sufficiency. 


Standard of Review

 In reviewing legal sufficiency, we consider only the evidence and inferences that tend
to support the finding, disregarding all evidence and inferences to the contrary. Vannerson
v. Vannerson, 857 S.W.2d 659, 666 (Tex. App.--Houston [1st Dist.] 1993, writ denied). If
there is any evidence of probative force to support the finding, i.e., more than a mere
scintilla, we will overrule the issue. Id. "When the evidence offered to prove a vital fact is
so weak as to do no more than create a mere surmise or suspicion of its existence, the
evidence is no more than a scintilla and, in legal effect, is no evidence." Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983); Seideneck v. Cal Bayreuther Assocs., 451
S.W.2d 752, 755 (Tex. 1970). However, if the evidence supplies some reasonable basis for
differing conclusions by reasonable minds as to the existence of a vital fact, then there is
some evidence. Kindred, 650 S.W.2d at 63. 

Sexual Harassment

 To establish a claim for sexual harassment by a co-worker, a plaintiff must show that
(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the
harassment was based on sex; (4) the harassment affected a term, condition, or privilege of
her employment; and (5) her employer knew, or should have known, of the harassment and
did not take prompt, remedial action. Green v. Indus. Specialty Contractors, Inc., 1 S.W.3d
126, 131 (Tex. App.--Houston [1st Dist.] 1999, no pet.); see also Skidmore v. Precision
Printing and Packing, Inc., 188 F.3d 606, 615 (5th Cir. 1999). (2) Gulf States Toyota does not
challenge the first three elements, but contends that Morgan did not establish elements four
and five. We consider only the fifth element. 

Prompt, Remedial Action

 Gulf States Toyota first contends that there is no evidence to establish that it did not
take prompt, remedial action once it knew or should have known of the inappropriate
conduct. Gulf States Toyota argues that the action taken by the supervisor on August 6, the
lack of any harassment between August 7 and August 19, and the disciplinary action after
the harassment on August 19 established that the employer's action was both prompt and
remedial. 

 Morgan responds that the action was neither prompt nor remedial. She contends that
Gulf States Toyota did not (1) adopt a sexual harassment policy and communicate it to all
employees, (2) immediately separate her from Zamarron, (3) sufficiently remove Zamarron
from her work place during the investigation, (4) provide remedial training to Zamarron, (5)
ensure that she could continue in her normal work area free of harassment, or (6) provide a
sufficient penalty to Zamarron. 

 Gulf States Toyota had a sexual harassment policy, which was admitted into evidence. 
Morgan, an employee of Tandem, received a copy of Tandem's sexual harassment policy,
which she signed as having received. The policy stated that she should notify Tandem of any
sexual harassment. 

 An employer is not required to impose the most serious sanction available to punish
a sexual harassment offender, particularly when it is the employee's first offense. See
Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992), aff'd, 511 U.S. 244, 114 S.
Ct. 1483 (1994). Rather, an employer must take prompt, remedial action. See Skidmore, 188
F.3d at 615. 

 Prompt, remedial action is action that is reasonably calculated to end the harassment. (3) 
Id.

 What is appropriate remedial action will necessarily depend on the particular
facts of the case--the severity and persistence of the harassment, and the
effectiveness of any initial remedial steps. . . . [N]ot every response by an
employer will be sufficient to discharge its legal duty. Rather the employer
may be liable despite having taken remedial steps if the plaintiff can establish
that the employer's response was not "reasonably calculated" to halt the
harassment. 

Id. at 615-16 (quoting Waltman v. Int'l Paper Co., 875 F.2d 648, 479 (5th Cir. 1989)). It was
Morgan's burden to establish that Gulf States Toyota did not take prompt, remedial action. 
See id. at 616. 

 The Fifth Circuit Court of Appeals has often found an employer's response to a
complaint of sexual harassment to constitute prompt, remedial action as a matter of law. Id.
at 616 (citing Hirras v. Nat'l R.R. Passenger Corp., 95 F.3d 396, 500 (5th Cir. 1996) (listing
cases)). The Fifth Circuit has considered such factors as whether the offending behavior
stopped and whether the plaintiff quit the job before the remedy could have an effect. Id.;
Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 309-10 (5th Cir. 1989). In Skidmore,
the employer moved Skidmore to a different location temporarily, then moved her back, but
put her and the alleged harasser on different shifts. Id. The employer did not investigate the
complaint, reprimand the offender, or make follow-up inquiries to determine whether the
harassment had stopped. Skidmore, 188 F.3d at 616. Nevertheless, Skidmore did not make
any further complaints, and the Fifth Circuit found that the employer took prompt, remedial
action as a matter of law. Id. 

 In Indest v. Freeman Decorating, Inc., 164 F.3d 258 (5th Cir. 1999), Arnaudet, a vice-president of Freeman, made crude, sexual comments and gestures to Indest while they were
working at a convention. Id. at 260. On the third day of the convention, Indest informed
Arnaudet that his comments and gestures were sexual harassment, and he responded by
telling her not to threaten him, disparaging her abilities as an employee, and saying they
would work at another convention together. Id. She became upset, started crying, and took
off work the next day. Id. There were no further incidents of harassment. Id. On the fifth
day of the convention, Indest reported the incidents to her director, DiMaggio, and to the
branch office manager, Hagstette. Id. Hagstette reported the complaint to the human
resources director, Camp, and DiMaggio told Indest to talk to Camp, which she did
approximately one week later. Id. Camp investigated the complaint and reported it to the
president, Don Freeman. Id. Freeman issued a verbal and written reprimand to Arnaudet and
informed Indest of the action. Id. Several days later, Indest sent a letter to Camp, stating that
she intended to file an EEOC charge because she feared retaliation. Id. at 261. About two
weeks later, a human resources employee assured Indest that there would be no retaliation
and Indest was informed that Arnaudet would be suspended seven days without pay and
would be prohibited from attending an important annual meeting. Id. In determining that
the employer did not have vicarious liability for Arnaudet's actions, the Fifth Circuit stated
that "the employer took prompt remedial action." Id. at 265. 

 In Dornhecker, 828 F.2d at 307, after enduring two days of inappropriate touching and
crude sexual remarks during an out-of-town trip, Dornhecker complained, and the president
of the company told her she would not have to work with the alleged harasser after that trip. 
Id. at 308. Dornhecker resigned shortly after talking to the president. Id. at 308-09. The
Fifth Circuit characterized the employer's response, which occurred approximately 12 hours
after Dornhecker's complaint, as "unusually prompt." Id. at 309. 

 In the present case, it is undisputed that Gulf States Toyota neither knew nor should
have known of Zamarron's sexual harassment until August 6. After Morgan's first
complaint on August 6, a supervisor took immediate action by speaking with Zamarron and
observing Morgan and Zamarron at work the remainder of the day. On August 7, the
supervisor moved Zamarron to a work station farther away from Morgan. On August 10,
Morgan told Chamblee that she had no other complaints. Morgan testified that there were
no incidents on August 10, 11, or 18. In the meantime, Chamblee was investigating the
matter, although the investigation was delayed by Morgan's absence on August 12 through
17. When Morgan returned to work on August 18, Chamblee spoke with her about the
investigation, and Morgan again stated that there had been no further incidents. On August
19, when Morgan reported a second incident, Chamblee took immediate action by verbally
reprimanding Zamarron, placing a written reprimand in his personnel file, telling him another
incident could result in termination, and suspending him without pay for five days. After this
disciplinary action, Morgan did not return to work for a sufficient time to see whether the
action did, in fact, stop the harassment. 

 We hold that, as a matter of law, Gulf States Toyota's responses to Morgan's
complaints on August 6 and August 19 were prompt, remedial actions and were reasonably
calculated to halt the harassment. 

 In light of our holding, we need not reach Gulf States Toyota's factual sufficiency
argument. We also need not reach the issue of whether there was legally or factually
sufficient evidence that the sexual harassment affected a term, condition, or privilege of
employment. See Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 299 (5th Cir. 2001). 

 We sustain Gulf States Toyota's challenge to the legal sufficiency of the evidence that
it failed to take prompt, remedial action once it knew or should have known of the sexual
harassment, reverse the judgment, and render judgment that Morgan take nothing. 



 Sam Nuchia

 Justice


Panel consists of Justices Mirabal, Nuchia, and Price. (4)

Publish. Tex. R. App. P. 47. 
1. Tex. Lab. Code Ann. §§ 21.001-.556 (Vernon 1996 & Supp. 2002).
2. Because one of the stated purposes of the Texas Commission on Human Rights Act
is "to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964"
and its amendments, we look to federal precedent for guidance when interpreting the Act. 
See Tex. Lab. Code Ann. § 21.001(1) (Vernon 1996); NME Hosps., Inc. v. Rennels, 994
S.W.2d 142, 144 (Tex. 1999). 
3. The jury charge instructed the jury that "'prompt, remedial action' requires an
employer to take reasonably calculated steps to end the harassment."
4. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of
Texas at Houston, participating by assignment.