ACCEPTED
04-14-00746-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 9:30:00 PM
KEITH HOTTLE
CLERK

No. 04-14-00746-CV

In the Court of Appeals
for the Fourth District of Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
04/9/2015 9:30:00 PM
KEITH E. HOTTLE
Clerk

**ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT**,
Appellant,

v.

**CATHERINE CLARK**,
Appellee.

On Appeal from the 285th Judicial District Court
of Bexar County, Texas

## APPELLANT'S REPLY BRIEF

**ATTORNEYS FOR APPELLANT**

Robert A Schulman
State Bar No. 17834500
Leonard J. Schwartz
State Bar No. 17867000
Bryan P. Dahlberg
State Bar No. 24065113
SCHULMAN, LOPEZ & HOFFER, L.L.P.
517 Soledad Street
San Antonio, Texas 78205
Tel.: (210) 538-5385
Fax: (210) 538-5384

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ ii

INDEX OF AUTHORITIES .................................................................................... v

SUMMARY OF REPLY .......................................................................................... 1

REPLY .................................................................................................................... 2

    I.    Plaintiff's "Statement of Facts" contains multiple significant misstatements .................................................................................... 2

        A. That plaintiff was considered by her employer, AHISD, to be a superlative employee with an unblemished employment record prior to her engagement in protected activity is a gross distortion of jurisdictional evidence .................................................... 2

        B. That plaintiff's supervisor, her principal, was informed of and had been ignoring her complaints against her coworker, Monterrubio, for months prior to her having complained to her principal in writing on May 15, 2008 is another gross distortion of jurisdictional evidence ................................................................... 7

        C. Plaintiff has embellished and invented allegations over the course of this lawsuit and her Brief contradicts her initial May 15, 2008 written report ........................................................ 9

        D. At all times AHISD followed its own sexual harassment policies in responding to plaintiff's allegations ............................... 12

        E Contrary to her recent and unfounded assertions in her Brief, the record evidence demonstrates that plaintiff's TINA (her growth plan) was not issued in retaliation for her having complained ........................................................................................ 14

        F. The record evidence does not support plaintiff's conclusion that AHISD violated its custom or policy in evaluating and recommending plaintiff's termination in the Spring of 2009 ............ 18

II. Argument and Authorities ............................................................... 22

    A. *Mission Consolidated* and the making of a *prima facie* case sufficient to withstand a jurisdictional challenge .............................. 22

III. Plaintiff has failed to establish the third, fourth and fifth elements of her sexual harassment claim ............................................................ 23

    A. Plaintiff has failed to show that the alleged harassment was "based on gender" ....................................................................... 23

    B. Plaintiff has failed to show that the alleged harassment was severe or pervasive under standards established by the Fifth Circuit ............................................................................................... 26

    C. Plaintiff has failed to meet her burden of demonstrating that AHISD was negligent in controlling the workplace, and the jurisdictional evidence conclusively establishes that AHISD responded appropriately to her complaints ....................................... 28

IV. Plaintiff has failed to show that AHISD's legitimate nonretaliatory reasons for termination were pretextual as required to defeat a jurisdictional challenge to her retaliation claim under *Mission Consolidated* ..................................................................................... 29

    A. Under *Texas SOAH v. Birch* pretext is to be considered in engaging in the Mission Consolidated jurisdictional analysis .......... 30

    B. Even were pretext not part of a jurisdictional analysis, plaintiff's retaliation claim fails because her proffered circumstantial evidence is insufficient as a matter of law to support an inference of causation .................................................... 32

        1. Plaintiff cannot rely on a theory of temporal proximity because her performance deficiencies had been identified and addressed by AHISD before she ever engaged in protected activity ...................................................................... 33

2. Plaintiff was not similarly situated to Monterrubio, as she alone suffered from an astounding and unprecedented variety of consistent and severe, and irremediable, performance deficiencies setting her apart and in a class separate from any other AHISD employee to come before of after her. ................................................................. 34

PRAYER ................................................................................................. 36

CERTIFICATE OF SERVICE .................................................................. 37

CERTIFICATE OF COMPLIANCE ........................................................ 38

APPENDIX .............................................................................................. 39

# INDEX OF AUTHORITIES

## CASES

*Arredondo v. Gulf Bend Center*,
   No. H-06-1580, 2007 WL 1004051 (S.D. Tex. Mar. 30, 2007) ................. 33

*AutoZone, Inc. v. Reyes*,
   272 S.W.3d 588 (Tex. 2008) ............................................................... 29, 34

*Cantu v. Peacher*,
   53 S.W.3d 5 (Tex. App.—San Antonio 2001, pet. denied) ........................ 22

*City of Laredo v. Negrete*,
   2010 WL 454921 (Tex. App.—San Antonio 2010, pet. denied) ........... 26-27

*Doe ex rel. v. Dallas Independent School District*,
   220 F.3d 380 (5th Cir. 2000) ................................................................. 22

*E.E.O.C. v. Boh Brothers Construction Co., L.L.C.*,
   731 F.3d 444 (5th Cir. 2013) ................................................................. 24

*English v. Pohanka of Chantilly, Inc.*,
   190 F. Supp. 2d 833 (E.D.Va. 2002) ....................................................... 25

*Faragher v. Boca Raton*,
   524 U.S. 775 (1998) .............................................................................. 29

*Gulf States Toyota, Inc. v. Morgan*,
   89 S.W.3d 766 (Tex. App.—Houston [1st. Dist.] 2002, no pet.) ..... 23, 26, 28

*KIPP v. Rosenberg*,
   2015 WL 410454 (Tex. App.—Houston [14th Dist.] 2015, pet. filed) ... 29-30

*KIPP v. Whitehead*,
   466 S.W.3d 99 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ..... 29, 31

*La Day v. Catalyst Tech., Inc.*,
   302 F.3d 474 (5th Cir. 2002) ................................................................. 24

*Lauderdale v. Texas Department of Criminal Justice,*
        512 F.3d 157 (5th Cir. 2007) ........................................................ 15

*Little v. Liquid Air Corp.,*
        37 F.3d 1069 (5th Cir. 1994) ....................................................... 32

*Love v. Motiva Enterprises LLC,*
        349 Fed. App'x 900 (5th Cir. 2009) ........................................... 25

*McDonnell Douglas Corp. v. Green,*
        411 U.S. 792 (1973) ............................................................. *passim*

*Meritor Savings Bank v. Vinson,*
        477 U.S. 57 (1986) ...................................................................... 26

*Mission Consolidated Independent School District v. Garcia,*
        372 S.W.3d 629 (Tex. 2012) ................................................*passim*

*Oncale v Sundowner Offshore Services, Inc.,*
        523 U.S. 75 (1998) ................................................................. 23-27

*Ptomey v. Texas Tech University,*
        277 S.W.3d 487 (Tex. App.—Amarillo 2009, pet. denied) ............ 15, 30, 32

*Quantum Chemical Corp. v. Toennies,*
        47 S.W.3d 473 (Tex. 2001) ........................................................ 30

*Texas State Office of Administrative Hearings v. Birch,*
        No. 04-12-00681-CV, 2013 WL 3874473
        (Tex. App.—San Antonio July 24, 2013, pet. denied) ......................... 30-31

*University of Texas, M.D. Anderson Cancer Center v. Valdizan-Garcia,*
        No. 01-12-00386-CV, 2012 WL 5545783
        (Tex. App.—Houston [1st Dist.] November 15, 2012, no pet.) .................. 31

*Vance v. Ball State University,*
        133 S.Ct. 2434 (U.S. 2013) ......................................................... 28

*Vickers v. Fairfield Medical Center,*
    453 F.3d 757 (6th Cir. 2006) ........................................................................ 24

*Wal-Mart Stores, Inc. v. Itz*,
    21 S.W.3d 456 (Tex. App.—Austin 2000, pet. denied) ......................... 26-27

*Ysleta Independent School District v. Monarrez,*
    177 S.W.3d 915 (Tex. 2005) .............................................................. 34-35

## STATUTES AND RULES

Tex. Lab. Code § 21.051, .055 ........................................................... *passim*

## SUMMARY OF REPLY

The significance of the Texas Supreme Court's holding in *Mission Consolidated*, which governs this Plea to the Jurisdiction, is that in order to overcome governmental immunity a plaintiff asserting a public school district's violation of the Texas Commission on Human Rights Act (TCHRA), must "actually allege a violation of the TCHRA *by pleading facts that state a claim thereunder*." *Id.* at 635-36 (emphasis added). Finding that an "inquiry" into the substance of a plaintiff's claims was required, the *Mission* Court reasoned: "[…] if TCHRA plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would practically be eliminated." *Id.* at 638. As such, the Supreme Court's clear instruction to lower courts is a duty to examine whether a plaintiff's claims truly support a cause of action under the TCHRA and to dismiss claims found lacking.

Here, the Alamo Heights Independent School District (AHISD or Appellant) appealed the trial court's decision that ignored the *Mission Consolidated* holding. *See* Appellant's Brief. The Appellee responded (*see* Appellee's Brief) and AHISD now files this Reply.

The thrust of Appellee's Brief is argument that the trial court did not err in denying AHISD's jurisdictional plea because the factual allegations in Appellee's pleadings (to be construed always in favor of her claims) coupled with her

arguments, made out a *prima facie* sexual harassment and retaliation case under the TCHRA, thus meeting her jurisdictional requirements under *Mission Consolidated.*

In this Reply, AHISD will show that significant "facts" relied upon by Appellee in support of this contention were contorted, misrepresented and/or mischaracterized to such an extent that Appellee has no *prima facie* case and that once stripped of these embellishments and misrepresentations, the jurisdictional evidence clearly demonstrates the material deficiency of her claims that must, under *Mission Consolidated* and its prodigy, be dismissed.

Appellee will also demonstrate that the "issue" of whether the Mission decision requires a jurisdictional review under the *McDonnell Douglas* rubric beyond the existence of a prima facie case, into pretext (Appellant claims it does not and Appellee asserts the opposite), while relevant, is preceded by the fact that a plaintiffs' prima facie burden to have pled facts sufficient to support an inference of causation, the third required element of her *prima facie* case. As will be further developed below, in support of an inference of causation, Appellee/Plaintiff offered the trial court, as she again offers here, mere unsupported subjective belief that is wholly insufficient to meet this burden.

## REPLY

**I. Plaintiff's "Statement of Facts" contains multiple significant misstatements.**

To overcome AHISD's jurisdiction challenge, plaintiff is entitled to and will surely present only facts favorable to her case. But, in doing so plaintiff is not entitled to hyperbolize, exaggerate, misrepresent and otherwise distort testimony and documentary evidence. As such, AHISD points this Court to the following egregious and significant errors contained in plaintiff's "Statement of Facts."

**A. That plaintiff was considered by her employer, AHISD, to be a superlative employee with an unblemished employment record prior to her engagement in protected activity is a gross distortion of jurisdictional evidence.**

In support of her claim to have met the *prima facie* burden of demonstrating a causal relationship between her protected activity and subsequent adverse employment actions, plaintiff would have this court accept as "fact" that she was considered by AHISD to be a "perfect" employee (*see* Appellee's Brief, p. 1), that she had not before received a "negative evaluation"(*id.*), and that she was never instructed to not bring her children to her workplace prior to her having reported harassing conduct to her supervisor on May 15, 2008 (*id.* at p. 15).

Even assuming *arguendo* that plaintiff's having made this report was a protected activity, the evidence submitted to the trial court not only fails to support these "factual" contentions, it supports a polar opposite result.

**A Perfect Employee?**

Plaintiff's claim to perfection as an employee is with regard to a single 45 minute AHISD assessment, an observation of plaintiff's classroom that was conducted 90 days into her first semester of employment. (CR 391-96) But, AHISD concedes that at the time of her hiring, plaintiff was considered qualified for her position and the evidence submitted to the trial court was that well prior to plaintiff's complaint to her supervisor, Principal, Stephanie Kershner had been addressing and attempting to correct plaintiff's performance deficiencies as they related to her relationship with her peers. (Supp. CR, Vol. I. 181-182)

The single, "perfect" 45-minute observation of plaintiff's physical education class occurring on December 7, 2007 concerned only Plaintiff's classroom interactions with her students[1] and did not rate her performance and interactions with peers in any of the areas that ultimately formed the basis of her growth plan, Domains V-VII, "Professional Communication," "Professional Development," and "Compliance With Policies, Operating Procedures, and Requirements," respectively. (CR 391-94)

---

[1] The four performance areas in which plaintiff was rated during this initial observation were Domains I-IV, "Active, Successful Student Participation in the Learning Process," "Learner-Centered Instruction," "Evaluation and Feedback on Student Progress," and "Management of Student Discipline, Instructional Strategies, Time, and Materials." (CR 391-96)

[2] *See* www.merriam-webster.com/dictionary/chutzpah

noun chutz·pah \ˈhu̇t-spə, ˈ k̲u̇t spä\. : Yiddish: personal confidence or courage that allows

**A First and Only Negative Evaluation**?

Plaintiff would have this court accept as fact that it was not until 2009, and only after her complaint to her Principal, that she received her "first and only negative evaluation" (*see* Appellee's Brief, p. 1), but this again misrepresents the uncontroverted evidence. Plaintiff's complaint to her principal was on May 15, 2008, but prior to conducting plaintiff's March 3, 2008 summative annual appraisal, plaintiff's principal had received student reports of her contentious relationship with her alleged harasser, coach Monterrubio, on which she counseled plaintiff at the March 3, 2008 summative appraisal conference. (Supp. CR, Vol. I. 181-182) Likewise, during the March 3, 2008 summative annual appraisal, while rating her as but "proficient" in two performance areas, including "Professional Communication" plaintiff was directed to "communicate with girls' athletic coordinator and administrators," indicating a concern with plaintiff's performance at that time. (CR 399-400)

**Don't Bring Your Kids to School Ma'am!**

Plaintiff contends as "fact" that it was not until after her complaint to her Principal that AHISD directed her to stop bringing her children to school during the workday. *See* Appellee's Brief, p. 15. The trial court evidence is that Kershner had issued this same directive to plaintiff prior to plaintiff's complaint about

5

Monterubbio. In plaintiff's own words her principal had "told [her] that [her] daughter coming to the school twice a week during the last hour [of the workday] **was causing problems in the workplace**" instructing her to cease this practice. (CR 333, emphasis added). Kershner also testified that this reprimand and directive to plaintiff had occurred prior to plaintiff's complaint, that she, Kershner, was only enforcing campus policy that plaintiff had repeatedly violated. (Supp. CR, Vol. I. 184, 227-231)

**The Principal's 2009 recommendation as Plaintiff's First and Only Negative Evaluation**

The uncontroverted evidence before the trail court was that in June of 2009, plaintiff's principal prepared a letter to her Superintendent recommending that plaintiff be terminated for cause. The letter was accompanied by a profoundly deficient evaluation, that plaintiff would have this court accept as her "first and only negative evaluation." *See* Appellee's Brief, p. 1. In some circles the term of art for this sort of contention is "chutzpah."[2] The uncontested record evidence is that in August, September, and October of 2008, Kershner and AHISD administrators held numerous meetings with plaintiff in an attempt to remediate the significant performance issues, including her failure to follow previous directives

---

[2] *See* www.merriam-webster.com/dictionary/chutzpah

> noun chutz·pah \ˈhu̇t-spə, ˈk̲u̇t spä\. : Yiddish: personal confidence or courage that allows someone to do or say things that may seem shocking to others.

to not leave her children unattended at work, a growing and obvious inability to perform duties and function cooperatively with others, and failures to comply with AHISD's policies. (Supp. CR, Vol. I. 227-231; *see also* Appellant's Brief, pp. 13-15) The record is also replete with significant efforts made by AHISD to have plaintiff remediate these severe performance deficiencies (*id.*) including placing her on a growth plan and issuing her a written reprimand. (Supp. CR, Vol. I. 184-185, 236-237) It is conceded that plaintiff filed an EEOC charge on October 7, 2008, three weeks prior to the implementation of the growth plan, but it is also uncontested that her growth plan was based on plaintiff's conduct identified by AHISD and addressed with her months prior. *Id.*

Once rectified, plaintiff's distorted statement of "facts" belies her contention that she was a perfect employee with no performance deficiencies prior to her engagement in protected activity, and as such she cannot successfully contend that she has proffered evidence supporting her having demonstrated a causal relationship between her protected activity and subsequent adverse employment action, which is the third *prima facie* element of her retaliation claim.

**B. That plaintiff's supervisor, her principal, was informed of and had been ignoring her complaints against her coworker, Monterrubio, for months prior to her having complained to her principal in writing on May 15, 2008 is another gross distortion of jurisdictional evidence.**

In support of her claim to have met the *prima facie* burden of demonstrating

AHISD's negligence in controlling the workplace, plaintiff would have this court accept as "fact" that plaintiff's supervisor, her principal, had been informed of and had been ignoring her complaints against her coworker, Monterrubio, for months prior to her having complained to her principal in writing on May 15, 2008 (*see* Appellee's Brief, p. 4) when in fact, the jurisdictional evidence demonstrated only that Plaintiff's May 15, 2008 letter was the first time she reported sexually oriented conduct to her principal.

According to plaintiff's "facts" her principal was informed of her allegations against Monterrubio on numerous occasions and for months during the Spring of 2008 (*see* Appellee's Brief, pp. 3-5), a good trick in that plaintiff also states that she *had not,* previous to her May 15, 2008 allegations, brought these complaints to her supervisor's attention.[3] In fact, in her May 15, 2008 written report to her principal plaintiff explains that she "had major hesitation about writing this very complaint" (CR 341), and included a list of reasons to explain "why I am *just now* reporting this to you." (CR 340, emphasis added)  These are not the words of someone who has previously reported the same behavior to Kershner, much less done so on numerous occasions.

The closest plaintiff gets to alleging prior knowledge of her supervisor in her letter is her suggestion that because her principal addressed her relationship with

---

[3] There is no evidence, nor is there allegation, that plaintiff's alleged Fall 2007 report to a "friend," Annette Kessler, ever reached Kershner.

Monterrubio at the March 3, 2008 summative conference, she "must have been aware of ***problems in the workplace.***" (CR 340, emphasis added) Moreover her principal's testimony was that the March 3, 2008 summative conference discussion with plaintiff about her relationship with Monterrubio was about, and only about, a disagreement between the two over an instructional approach, namely where to hold classes, and how to discipline students who refused to dress for physical education classes. (CR 239)

Thus, plaintiff's own words at the time of her report, bolstered by her supervisor's consistent testimony, reject plaintiff's unsupported "factual" assertion that her principal had long known of the alleged sexual harassment and thus undermines her contention that AHISD failed to control the workplace by taking earlier corrective action, the fifth required *prima facie* element of her sexual harassment claim.

C. **Plaintiff has embellished and invented allegations over the course of this lawsuit and her Brief contradicts her initial May 15, 2008 written report.**

As just described and as will follow, plaintiff's Statement of Facts falsely depicts a severe, pervasive and offensive work environment of sexual advances, which plaintiff offers in support of her argument that she met the third and fourth required *prima facie* elements of her sexual harassment claim: (3) that the harassment constituted discrimination based on her gender, and (4) that it altered

9

the terms and conditions of her employment. *See* Appellee's Brief, pp. 2-4. Plaintiff's current allegations are materially different from those she first reported to her principal in her May 15, 2008 letter.

Plaintiff's May 15, 2008 letter characterized Monterrubio's behavior as "rude," "abrasive," "inappropriate," "bullying," "harassing," "offensive," "derogatory," "threatening," and "intimidating" (CR 328-341), but never alleged that Monterrubio's conduct was discrimination based on plaintiff's gender. (CR 328-341) Instead, plaintiff described Monterrubio as "jealous" of her (CR 329), and that Monterrubio was snubbing her because plaintiff was one of the "Alamo Heights mothers" thought of as "smug, wealthy, and snotty," and that Monterrubio had called her daughters "trust-fund babies." (CR 333-334) These reasons have nothing whatsoever to do with plaintiff's gender, but give every indication that Monterrubio simply did not like plaintiff and allegedly bullied her for reasons not protected by law.

Plaintiff also never alleged, as she now asserts in her Brief, that Monterrubio or Boyer were sexually attracted to her, nor that they made sexual advances towards her, nor that their subsequent bullying was a response to unreciprocated sexual interest (Appellee's Brief, p. 2). Today, plaintiff claims that Monterrubio and Boyer grabbed her buttocks while posing for a picture during the faculty Christmas party in 2007 (*see* Appellee's Brief, p. 3). This allegation is significantly

10

embellished and materially different from plaintiff's initial report, where she reported that unidentified "coaches" were "grabbing ***their private areas of their bodies*** for photographs next to a Christmas tree." (CR 330, emphasis added) For "factual" support, plaintiff cites her deposition testimony taken on March 22, 2013, several years after the alleged incident, and several years into this pending litigation, where she, for the first time, alleged that she had been grabbed sexually. (Sec. Supp. CR 190-91)

Plaintiff also cites this same deposition testimony for not just embellished, but *entirely new* allegations of Monterrubio's conduct that she had never before reported (*see* Appellee's Brief, pp. 16-17, citing Sec. Supp. CR 195-197). Plaintiff was a prolific complainant with over 100 separate and combined allegations of bullying and harassing behavior found in multiple reports in 2008-2009. While a few of these allegations could be considered complaints of inappropriate behavior, the vast majority involved matters such as her not being brought breakfast tacos, wadded up print jobs in the trash cans, and radios played at too loud a volume (*see* Appellant's Brief, p. 16, citing Supp. CR, Vol. I. 250-253). But now, through her Brief and only though her Brief, plaintiff goes to great lengths to make her allegations seem severe, pervasive, and discriminatory while the allegations she originally made during the course of her employment, and throughout the first three years of this lawsuit that compose the juridictional records in this appeal,

were nothing of the sort. It is inconceivable that such bombshell allegations as two co-workers sexually grabbing her buttocks could have slipped this plaintiff's mind when she otherwise complained if somebody played the radio too loud.

Absent plaintiff's embellished and recent allegations of sexual advances, she cannot demonstrate, as is her burden, that the alleged conduct was discrimination based on her gender. *See infra*, Part III.A, discussing the third *prima facie* element of plaintiff's same-sex hostile work environment claim. Moreover, once stripped of these embellishments, it becomes clear that the totality of plaintiff's allegations is insufficient to meet the severe or pervasive threshold required to prove the fourth *prima facie* element of her claim.

**D. At all times AHISD followed its own sexual harassment policies in responding to plaintiff's allegations.**

As demonstrated above, plaintiff's argument that her principal violated AHISD's policy by ignoring her complaints during the Spring of 2008 is baseless as plaintiff by her own admission had not reported these allegations to her principal until May 15, 2008. *See supra*, part I.B. Similarly, plaintiff mischaracterizes the testimony of Kershner, Bashara and Brown when she alleges in her Brief that Kershner violated AHISD's policy by not "formally handling Clark's protected report under the District's policy" when Kershner conducted the initial investigation into plaintiff's allegations herself. *See* Appellee's Brief, pp. 11-12.

Specifically, plaintiff asks this Court to conclude that the record contains no written documentation showing that Kershner had provided a copy of plaintiff's letter to Brown, who was the Director of Human Resources at the time, and that this establishes a "fact" that Kershner failed to bring plaintiff's report to his attention to conclude that Kershner lacked the administration's authority necessary to conduct an investigation of plaintiffs complaints. (*see* Appellee's Brief, p. 11, and Sec. Supp. CR 269). The record evidence is that Principal Kershner had informed Brown of plaintiff's charges (Supp. CR, Vol. I. 102) and (CR 243) and that AHISD policy expressly allowed for the investigation to be conducted by a campus principal. *See* Appellee's Brief, p. 11 and (Sec. Supp. CR 269).

Plaintiff then falsely claims that "Kershner admitted she [was] not qualified to conduct such an investigation as she had never done it before" *Id.* But, this an outright fabrication, as the record evidence is uncontested that principal Kershner had previously handled a similar investigation involving a complaint of sexually inappropriate conduct by a teacher towards students, nor had she, or anyone (other then plaintiff in her Brief), stated that she was unqualified to do so. (CR 246)

Plaintiff also falsely asserts that AHISD's policy was violated because a written report of the investigation was not filed with the district official overseeing the investigation. *See* Appellee's Brief, p. 13. But the record reveals that Kershner was the district official overseeing the investigation, and she had provided plaintiff

13

with a written report of her investigation and findings on May 23, 2008, which she also discussed with plaintiff in person on May 27, 2008. (CR 183, 225-26) The uncontroverted record testimony is also that Kershner shared the results of her investigation with Brown, the Director of Human Resources. (CR 102)

Plaintiff concludes that Kershner's investigation of her complaints was somehow illegitimate (*see* Appellee's Brief, p. 15), clearly attempting to create the impression with this Court that AHISD failed to follow its own policy in handling her complaint. While plaintiff may and obviously does disagree with the investigation results, AHISD's jurisdictional evidence leads this court to the opposite conclusion: that the school district and its administration followed AHISD policy and properly investigated plaintiff's allegations. Plaintiff cannot rely on these factual misrepresentations and thus, she cannot show that she has met the fifth required *prima facie* element of her claim, that AHISD was negligent in controlling the working conditions because it knew of her allegations and did not take appropriate action in response.

E. **Contrary to her recent and unfounded assertions in her Brief, the record evidence demonstrates that plaintiff's TINA (her growth plan) was not issued in retaliation for her having complained.**

Plaintiff's claim of retaliation, that by placing her on a TINA[4], AHISD retaliated against her in the Fall of 2008, relies on mischaracterized record

---

[4] TINA is the school district's acronym for Teacher in Need of Assistance, a growth plan.

evidence without which plaintiff is unable to demonstrate a causal relation, the third required *prima facie* element of her retaliation claim.[5]

Plaintiff first argues that she suffered harassment beyond that complained of in May of 2008 more or less silently because "any further reports of harassment would have been futile, and Kershner never followed up to prove her wrong" (Appellee's Brief, pp. 15-16), when in fact the opposite is true. Kershner conducted a thorough investigation of her complaints. (CR 183, 225-26) Plaintiff even expressed satisfaction with the results, stating to Kershner that she was satisfied with the investigation and response to her May 15, 2008 complaint, thanking Kershner, and saying that she "trusted [Kershner's] judgment with respect to the conclusions of [Kershner's] investigation." (Supp. CR, Vol. I. 183, 193-197) Plaintiff was obviously satisfied at the time with the investigation, but if she had not been satisfied AHISD's anti-harassment policy offered her an appeal through the School District's grievance procedures. (Supp. CR, Vol. I. 193-197) But plaintiff did nothing of the sort.[6] Instead, while she nebulously voiced a degree of

---

[5] *See Ptomey v. Texas Tech Univ.*, 277 S.W.3d 487, 495 (Tex. App.—Amarillo 2009, pet. denied), explaining that a retaliation claimant must raise a fact issue as to as to the existence of a causal relationship between having engaged in a protected activity and a subsequent adverse employment action.

[6] Plaintiff's currently expressed dissatisfaction with the results of Kershner's investigation contradicts her statements to Kershner at this time; moreover, she had opportunity to but failed to appeal that decision under clearly established AHISD policy. *See Lauderdale v. Texas Department of Criminal Justice*, 512 F.3d 157, 164 (5th Cir. 2007) (holding that when an employee believes that an initial complaint was ineffective, it is unreasonable to not utilize other avenues provided under the employer's policy).

discontent outside of AHISD's established reporting procedures, she made no new allegations of sexually inappropriate conduct, and she did not appeal the District's response. (Supp. CR, Vol. I. 183-184, 230) In fact, the record evidence reveals that in meetings with plaintiff during August, September, and October of 2008, her supervisor principal and another AHISD administrator, the School District Athletic Director, implored her to detail the vague and general complaints she was referencing. But, the record is also uncontested that plaintiff steadfastly refused to do so. *Id.*

Plaintiff also asserts in her Brief that "in response to the [EEOC] charge, Kershner warned [her] that her complaints would have consequences." *See* Appellee's Brief, p. 17. Plaintiff's deposition testimony describing conversations with her principal is otherwise:

> Q: Your complaints. I'm asking about your charge of discrimination. Did she ever infer or say there would be consequences for your having filed a charge of discrimination?
> MR. PEARSON: Object to the form. You can answer.
> A: No.

(Supp. CR, Vol. II 72)

Plaintiff also describes her TINA itself as retaliatory and unjustified because it concerned her failure to follow AHISD policy relating to her allegations of sexually inappropriate conduct. *See* Appellee's Brief, pp. 18-19. But the TINA's directive to plaintiff to follow District complaint procedures involved plaintiff's

16

allegations outside of AHISD's anti-harassment policy, vague allegations and references to incidents plaintiff described as "unprofessional behavior," in a September 29, 2008 meeting with Kershner, so vague and general that Kershner, and later the Athletic Director, begged plaintiff to provide specifics and to identify the employees she claimed to have been involved so that the District could investigate her general charges. (Supp. CR, Vol. I. 183-185, 230) The TINA was borne from plaintiff's refusal to do so and from Kershner having to direct plaintiff to utilize AHISD's grievance policy for future complaints and from such directives having gone unheeded. *Id.*

The uncontroverted record reveals that when plaintiff filed her Charge of Discrimination with the EEOC on October 7, 2008, she referenced her May 15, 2008 written report to Kershner, *but made no new allegations of inappropriate behavior of any sort*. (Supp. CR, Vol. I 232-33) The uncontested record also demonstrates that in January and February of 2009, when plaintiff made new allegations, she was not reporting incidents of sexual harassment but rather that she was being "bullied" and "ostracized" by her coworkers. (Supp. CR, Vol. I 185-87, 250-58) Her "new" and voluminous allegations were workplace grievances against coworkers, exactly the type of complaints plaintiff had, on multiple occasions, been expressly instructed to bring under AHISD's grievance policy. (Supp. CR, Vol. I 198-203).

Finally, the TINA clearly stated: "Catherine has repeatedly made reference to problems that have occurred with her physical education team, but she has never followed through with policy to submit these issues in writing as directed by Board Policy (DGBA LOCAL)." (Supp. CR, Vol. I 236) Her TINA also directed plaintiff to "comply with all policies, operating procedures and legal requirements." (Supp. CR, Vol. I 237) No reasonable interpretation of the record evidence of plaintiff's TINA supports her conclusion and argument that the TINA's directive was issued to her in retaliation.

**F.   The record evidence does not support plaintiff's conclusion that AHISD violated its custom or policy in evaluating and recommending plaintiff's termination in the Spring of 2009.**

In support of her claim to have met the *prima facie* burden of demonstrating a causal relationship between her protected activity and a subsequent adverse employment action, plaintiff suggests that she received an exceptional review with respect to the performance concerns covered in her TINA (professional communication and compliance with policies) (Supp. CR, Vol. I 236-37) and would have this court accept as "fact" her argument that AHISD violated its own custom and policy in evaluating and recommending her termination. *See* Appellee's Brief, pp. 19-21. Specifically, plaintiff asserts that AHISD violated its custom because Georgia Franks, an assistant principal, had previously conducted a classroom observation of plaintiff and her supervisor, campus principal Kershner,

18

conducted plaintiff's summative evaluation. *Id.* Plaintiff contends that Kershner replaced Franks and "conducted the biased annual evaluation in order to support Clark's wrongful termination." *Id.* Plaintiff further contends that Kershner altered the evaluation document by "remov[ing] Franks' name from the document entirely." *Id.* at p. 21. Finally, plaintiff, without further explanation, suggests that Superintendent Kevin Brown did not follow AHISD's termination policy when recommending plaintiff's termination for cause to the Board of Trustees. *Id.* at pp. 22-23. As more fully explained below, none of these bare and false assertions are supported by the jurisdictional evidence.

The record evidence is that Franks rated plaintiff's classroom performance though an observation conducted January 8, 2009. Rating plaintiff as "exceeds" in some areas she offered no rating to plaintiff with respect to Domains V-VII, areas addressed by plaintiff's ongoing TINA. (CR 405-411). Plaintiff's assertion that AHISD violated its custom when Kershner conducted plaintiff's summative annual appraisal, even though Franks had conducted the observation (*see* Appellee's Brief, pp. 20-21) further mischaracterizes Kershner's testimony, which is the only evidence offered by plaintiff to support the existence of such a custom. *Id.* Contrary to plaintiff's assertion that "it was customary for the same administrator to conduct the [mid-year] evaluation and the annual evaluation" (*see* Appellee's Brief, pp. 20-21), Kershner testified that it was ***not unusual*** for her to conduct

19

annual evaluations even though an assistant principal had conducted the mid-year observation (CR 234-35) and there is no documentary evidence anywhere in the record suggesting otherwise. The following testimony addressing plaintiff's claim that her evaluation was a retaliatory "consequence" of her having filed an earlier complaint, her unsupported beliefs, is all plaintiff has to support her "factual" claims:

> Q:  […] How do you know, other than your belief, that this [being evaluated by Kershner after being observed by Franks] is one of the consequences? Someone tell you? Did someone tell you that this was one of the consequences?
> A:  No, sir.
> Q:  So all you have is your own belief, correct?
> MR. PEARSON:   Object to the form.
> A:  I just know it.
> Q:  You just know it in your heart, correct?
> MR. PEARSON:   Object to the form.
> A:  Yes.

(Supp. CR, Vol. II 79) Thus, Kershner's testimony dispenses with plaintiff's contention of "custom" basing her conclusions on nothing more than an unsubstantiated subjective belief.

Plaintiff's assertion that Kershner "removed Franks' name from the document entirely" (*see* Appellee's Brief, p. 21) is a very serious but thankfully entirely unsubstantiated charge of criminal misconduct against Kershner. AHISD wishes to give plaintiff the benefit of an analysis that her baseless charge is the

20

result of her confusing Franks' observation summary (CR 405-12) with Kershner's summative annual appraisal (CR 357-64). There is no record evidence that either of these entirely different and distinct documents were altered in any way by Kershner or anyone else on behalf of AHISD.

There is similar absurdity with regard to plaintiff's "factual' claim that when Brown told her that she would be informed of the Board's action "pretty much immediately" meant her proposed termination was a "done deal." *See* Appellee's *Brief,* pp. 22-23. The undisputed evidence in this matter is that the Notice of Proposed Termination to plaintiff informed her of her full due process opportunity and her right to contest her proposed termination, to require the District to prove its reasons for the proposal and to establish good cause for her termination in a full evidentiary due process hearing before an independent hearing examiner. (Supp. CR, Vol. I 105, 138-74) The record is also undisputed that Plaintiff entirely rejected this opportunity to contest the Board's proposed termination. (CR 105) Except now, she would have this Court accept as fact that her resistance at that time would have been futile! *See* Appellee's Brief, p. 22.

Plaintiff's attempted demonstration of the third *prima facie* element of her retaliation claim, that AHISD violated its custom and policy in evaluating and recommending her termination in 2009, is not only not supported by the jurisdictional evidence, it contradicts her own testimony and allegations.

## II. Argument and Authorities

### A. *Mission Consolidated* and the making of a *prima facie* case sufficient to withstand a jurisdictional challenge.

Although this appeal involves a plea to the jurisdiction, the Texas Supreme Court held in *Mission Consolidated* that the standard of review "mirrors that of a traditional summary judgment" and the plaintiff must raise a fact issue on each of the jurisdictional elements of her claims. *See Mission Consol.*, 372 S.W.3d at 635.

Here, Plaintiff asks this court to accept her Statement of Facts without challenge or change so that she may support her jurisdictional defense and meet her initial burden of proving the elements of a *prima facie* TCHRA case. *See Mission Consol.*, 372 S.W.3d at 638. In doing so, plaintiff is permitted to reach into her arsenal of allegations, expecting the court to accept all well-plead allegations and even disputed facts as supporting her claims. *Id.* But, in doing so, plaintiff may not, without explanation, manufacture a genuine issue of material fact as attempted here, through the offer of an affidavit that contradicts her prior testimony. *See Doe ex rel. v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (omitting citations); *see also Cantu v. Peacher*, 53 S.W.3d 5, 10 (Tex. App.—San Antonio 2001, pet. denied). To allow otherwise "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* In as much, the foregoing assertions made in plaintiff's Brief, that contradict and misrepresent the jurisdictional evidence in this

22

case, and uncontroverted sworn deposition testimony, are to be disregarded by this Court.

**III.** **Plaintiff has failed to establish the third, fourth and fifth elements of her sexual harassment claim.**

Plaintiff's sexual harassment claim is based on the alleged harassment of her same-sex coworkers, Ann Monterrubio and Michelle Boyer. *See* Plaintiff's Second Amended Petition, p. 3. Her *prima facie* case requires proof of the following elements: (1) that she is a member of a protected category (*i.e.*, female); (2) who was subjected to unwelcome harassment; (3) that was based on gender; (4) and which affected a term, condition, or privilege of her employment; and (5) that her employer, AHISD, knew, or should have known, of the harassment and did not take prompt remedial action. *See Gulf States Toyota, Inc. v. Morgan*, 89 S.W.3d 766, 770 (Tex. App.—Houston [1st. Dist.] 2002, no pet.). Plaintiff has failed to raise a fact issue on the third, fourth, and fifth *prima facie* elements, which deprives the trial court of subject matter jurisdiction over her claim. *See Mission Consol.*, 372 S.W.3d at 638.

**A.** **Plaintiff has failed to show that the alleged harassment was "based on gender."**

In a same-sex hostile work environment case such as this one, harassment that merely involves sexual content or has sexual connotations is not necessarily discriminatory. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80

(1998). A same-sex plaintiff must always show that the alleged harassment was based on gender. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). While plaintiff argues that she can offer additional evidentiary routes for establishing this element exists outside of those generally required in *Oncale*, she does in fact proceed under *Oncale*'s first evidentiary example. *See* Appellee's Brief, pp. 34-35.[7]   Under this route, plaintiff must establish the third "based on gender" element of her *prima facie* case of same-sex discrimination claim by showing (1) that her alleged harasser made explicit or implicit proposals of sexual activity, and (2) provide credible evidence that her alleged harasser was homosexual. *See Oncale*, 523 U.S. at 80.

Plaintiff's bare assertions that Monterrubio and Boyer "were physically attracted to [her]" and harassed her because plaintiff "did not reciprocate that interest" (*see* Appellee's Brief, p. 35) cannot withstand a minimal level of scrutiny. *See supra*, Part I.C.  Plaintiff's recent allegation that Monterrubio and Boyer had, on one occasion (the 2007 faculty Christmas party) grabbed her buttocks, contradicts her own report of this alleged incident made in May of 2008 where she alleged that unidentified coaches were grabbing ***themselves*** and not her. (CR 330)

---

[7] Plaintiff cites *EEOC v. Boh Bros., Constr. Co., L.L.C.*, 731 F.3d 444 (5th Cir. 2013), in which the Fifth Circuit recognized a same-sex discrimination claim based on an individual's failure to conform to gender stereotypes. However, this additional evidentiary route is inapplicable because plaintiff has made no argument that her appearance or mannerism on the job were perceived as gender non-conforming in some way, and that they provided the basis for the harassment she alleges. *Id.* at 456 n. 7 (citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir. 2006)).

Plaintiff makes no other allegation that could even remotely be construed as an explicit or implicit proposal of sexual activity. Moreover, plaintiff's argument is not supported by any credible evidence that Monterrubio and Boyer were or are homosexual. To the extent plaintiff has formed any subjective belief of this fact is, such belief is, as a matter of law, insufficient proof to avoid summary judgment on a same-sex sexual harassment claim. *See English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 846 (E.D. Va. 2002); *see also Love v. Motiva Enterprises LLC*, 349 Fed. App'x 900, 902-03 (5th Cir. 2009) (holding that allegations of inappropriate comments, gestures, and physical contact by same-sex co-worker were more indicative of humiliating or bullying behavior, ***and did not support an inference of sexual attraction and proposals for sex***).

Plaintiff cannot concoct these claims for the sole purpose of avoiding a jurisdictional challenge. She offers nothing from the jurisdictional record to remotely support her required demonstrations that she was the recipient of proposals for sexual activity and that her alleged harassers are homosexuals and thus, in this attempt, plaintiff has failed.

Plaintiff's recently invented allegations of sexual touching and sexual advances, for which the only example given is contradicted by her previous allegations, cannot reasonably form the basis of plaintiff's complaint that such

harassment was "based on gender," and her same-sex discrimination claim must be dismissed for this reason. *See Oncale*, 523 at 80.

**B.    Plaintiff has failed to show that the alleged harassment was severe or pervasive under the standards established by the Fifth Circuit.**

The fourth required *prima facie* element of plaintiff's sexual harassment case is that the alleged harassment must be demonstrated to have altered a term, condition, or privilege of her employment. *See Gulf States Toyota*, 89 S.W.3d at 770. In this respect, the Supreme Court and the Fifth Circuit have required plaintiffs to demonstrate conduct sufficiently severe or pervasive to constitute an actionable hostile work environment. *See, e.g., Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Here, plaintiff has not even alleged facts sufficient to demonstrate that the purported conduct of Monterrubio and Boyer remotely approached that threshold.

Plaintiff' argues that she does not need such proof because her "factual" claims are analogous to two cases: *City of Laredo v. Negrete*, 2010 WL 454921 (Tex. App.—San Antonio 2010, pet. denied) and *Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456 (Tex. App.—Austin 2000, pet. denied). However, these are the facts that distinguish plaintiff's claims from those holdings:

In both *Negrete* and *Itz*, the alleged harassers called their victims at their homes multiple times, made numerous unquestionable sexual advances towards their victims, and repeatedly touched them in a sexual manner. *See Negrete*, 2010

WL 454921 at *6; *Itz*, 21 S.W.3d at 463-65. The alleged behavior of Monterrubio and Boyer pales in comparison, and Fifth Circuit cases addressing the threshold for a same-sex hostile work environment have never before recognized an actionable claim under allegations as minimal and inconsequential as those alleged by plaintiff. *See* Appellant's Brief *discussion* Part III.C, pp. 54-60.

In support of her claim to have met the *prima facie* burden of demonstrating that Monterrubio and Boyer's alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment, plaintiff invents new allegations never before reported, and embellishes old ones in materially significant ways, all of which are contradicted by the jurisdictional evidence. *See supra*, Part I.C (discussing plaintiff's recently fabricated allegations) Yet, even if plaintiff's sham allegations are taken as true, which they should not be in light of the overwhelming jurisdictional evidence that contradicts them, courts have consistently rejected hostile work environment claims based on conduct far more severe than the allegations of teasing and offhand comments offered by plaintiff. *See, e.g., Oncale*, 523 U.S. at 82.

For these reasons alone plaintiff's attempt to meet the fourth *prima facie* element of her sexual harassment claim fails, as does her attempt to defend against the jurisdictional challenges of *Mission Consolidated* interpreting the TCHRA.

**C. Plaintiff has failed to meet her burden of demonstrating that AHISD was negligent in controlling the workplace, and the jurisdictional evidence conclusively establishes that AHISD responded appropriately to her complaints.**

The fifth element of a *prima facie* sexual harassment claim is a demonstration that the employer was negligent in controlling the workplace because it knew of the harassment and failed to take prompt remedial action. *See Gulf States Toyota*, 89 S.W.3d at 770. Plaintiff's argument that Boyer was her supervisor who failed to appropriately respond to her complaints (*see* Appellee's Brief, pp. 41-42) does not begin to engage the factors identified by the United States Supreme Court for making this determination. *See Vance v. Ball State University*, 133 S.Ct. 2434, 2439 (U.S. 2013) (holding that a "supervisor" is a person with authority to hire, fire, promote, reassign, and alter a plaintiff's benefits of employment). Here, it is undisputed that Boyer had no authority to hire, fire, promote, reassign or in any way alter plaintiff's employment benefits. (Supp. CR, Vol. I. 35-36, 181)

Contrary to the arguments in plaintiff's Brief, and as demonstrated by the uncontroverted jurisdictional evidence, the first-line AHISD employee with supervisory responsibilities over plaintiff was her principal, Kershner, and Kershner was not aware of plaintiff's allegations until May of 2008. And the record evidence is further undisputed that AHISD promptly investigated plaintiffs claims and took prompt remedial action to prevent future harassment. (CR 183,

28

225-26) Plaintiff's own negligence, in unreasonably failing to report her allegations sooner, prevented AHISD from taking any earlier action (Supp. CR, Vol. I. 183), and for such reasons plaintiff also fails to meet the fifth required *prima facie* element of a sexual harassment claim, leading to a dismissal of such claim under the relevant authorities. *See Faragher v. Boca Raton*, 524 U.S. 775, 806-08 (1998).

## IV. **Plaintiff has failed to show that AHISD's legitimate nonretaliatory reasons for termination were pretextual as required to defeat a jurisdictional challenge to her retaliation claim under *Mission Consolidated*.**

A plaintiff's *prima facie* burden for a retaliation claim differs notably from that of a discrimination claimant, as the ordinary (non-retaliation) *McDonnell Douglas* burden-shifting framework does not require evidence that a plaintiff's membership in a protected class factored into the adverse employment decision. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008).[8]

As such, plaintiff's retaliation claim is distinguishable from the discrimination claims brought in *KIPP v. Whitehead*, 466 S.W.3d 99 (Tex. App.— Houston [1st Dist.] 2014, pet. denied) (holding that consideration of pretext was not part of the jurisdictional analysis under *Mission Consolidated* for plaintiff's

---

[8] The Supreme Court held that a *prima facie* case of discrimination under the TCHRA requires an employee to show that (1) she is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class or was treated less favorably than other similarly situated employees who were outside of her protected class. *AutoZone*, 272 S.W.3d at 592.

gender and race discrimination claims), and *KIPP v. Rosenberg*, 2015 WL 410454 (Tex. App.—Houston [14th Dist.] 2015, pet. filed) (holding same as for age discrimination claim).

Conversely, under a retaliation TCHRA claim, such as plaintiff also asserts here, the third *prima facie* element of causation requires a plaintiff to raise a fact issue as to as to the existence of a causal relationship between having engaged in a protected activity and a subsequent adverse employment action. *See Ptomey v. Texas Tech Univ.*, 277 S.W.3d 487, 495 (Tex. App.—Amarillo 2009, pet. denied). And a plaintiff cannot do this absent direct or circumstantial evidence of actual retaliation. *Id.* In this respect, beyond speculation and innuendo, plaintiff has offered no evidence, embellished or not, of retaliation.

### A. Under *Texas SOAH v. Birch* pretext is to be considered when engaging in the *Mission Consolidated* jurisdictional analysis.

Where, as here, an employer offers legitimate nonretaliatory reasons for its adverse employment action (*see* Appellant's Brief, pp. 6-20, discussing plaintiff's numerous irremediable performance deficiencies), the rebuttable presumption of retaliation that plaintiff initially relied on to meet the third *prima facie* element under *McDonnell Douglas* vanishes. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001) (explaining that the employer's provision of a legitimate reason eliminates the presumption initially relied on by the plaintiff).

Without this presumption, and unless a plaintiff offers at least some circumstantial evidence of causation, rather than relying on her mere subjective belief, the plaintiff has not raised a fact issue as to the third required retaliation *prima facie* element. This was the holding that this Court previously reached in dismissing a plaintiff's retaliation claim in *Texas SOAH v. Birch*, No. 04-12-00681-CV, 2013 WL 3874473 at *19 (Tex. App.—San Antonio July 24, 2013, pet. denied). Furthermore, the First Court of Appeals, which decided *KIPP v. Whitehead*, implicitly recognized this distinction between discrimination and retaliation claims when it previously decided *University of Texas M.D. Anderson Cancer Center v. Valdizan-Garcia*, 2012 WL 5545783 (Tex. App.—Houston [1st Dist.] November 15, 2012, no pet.). In *Valdizan-Garcia*, the court granted the employer's plea to the jurisdiction under *Mission Consolidated*, holding that, where it had demonstrated legitimate nonretaliatory reasons for her termination, the plaintiff had failed to provide required evidence, beyond her subjective belief, demonstrating she would not have suffered the adverse employment act "but-for" her engagement in protected activity. *Id.* at *7-8. Thus, the court engaged in the *McDonnell Douglas* burden-shifting framework as part of its jurisdictional analysis under *Mission Consolidated*. *Id.*

Because the application of *Birch* and *Valdizan-Garcia* to this plaintiff's retaliation claims merely required her to raise a fact issue through allegations

legally sufficient to support a reasonable inference in her favor, her argument that considering pretext at this jurisdictional stage would create an excessive burden is not persuasive. *See Mission Consol.*, 372 S.W.3d at 635-36. Here, to demonstrate pretext, plaintiff would have only been required to allege circumstantial evidence that, taken as true, would suggest a retaliatory motive on the part of AHISD, the same circumstantial evidence that might support her initial *prima facie* burden to show causation. *See Ptomey*, 277 S.W.3d at 495. But, as here, a plaintiff's mere conclusory allegations and unsubstantiated subjective beliefs are insufficient to meet this burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). And, because plaintiff's factual misrepresentations have been laid bare, and for the reasons discussed in Section IV.B and C below, her evidentiary theories, the ones she might have relied on to meet this burden to show causation, have been demonstrated to be insufficient as a matter of law.

**B. Even were pretext not part of a jurisdictional analysis, plaintiff's retaliation claim fails because her proffered circumstantial evidence is insufficient as a matter of law to support an inference of causation.**

Plaintiff has offered no competent evidence, direct or circumstantial, that she was the victim of retaliation, except to argue that an inference of retaliation is established by the temporal proximity between her protected activity and AHISD's adverse employment action (Appellee's Brief, pp. 51-53), and by her unsubstantiated belief that Monterrubio was a similarly situated employee but was

treated differently (Appellee's Brief, pp. 23-25). However, the jurisdictional evidence is to the contrary such that the facts of this case cannot support an inference of causation under either evidentiary theory.

**1.** ***Plaintiff cannot rely on a theory of temporal proximity because her performance deficiencies had been identified and addressed by AHISD before she ever engaged in protected activity.***

Plaintiff's argument that she owned a stellar performance record prior to engaging in protected activity disintegrates upon basic scrutiny of the jurisdictional record. *See infra*, pp. 3-7; *see also* Appellant's Brief, pp. 43-45. As plaintiff admitted in her initial May 15, 2008 written complaint, she was already on notice from Kershner that her performance was deficient. *Id.* Likewise, the undisputed evidence conclusively establishes that plaintiff's growth plan, which was considered prior but began three weeks after she filed a charge with the EEOC, concerned significant performance deficiencies that AHISD had identified and taken several steps to remediate in the months prior to her EEOC charge. *Id.* The fact that plaintiff engaged in protected activity in the midst of these remediation efforts does not render her immune from discipline, does not confer a privileged status upon her, and does tie the District's hands in responding upon reasonable belief that plaintiff's performance was deficient. *See Arredondo v. Gulf Bend Ctr.*, No. H-06-1580, 2007 WL 1004051, at *6 (S.D. Tex. Mar. 30, 2007).

**2.** *Plaintiff was not similarly situated to Monterrubio, as she alone suffered from an astounding and unprecedented variety of consistent and severe, and irremediable, performance deficiencies setting her apart and in a class separate from any other AHISD employee to come before of after her.*

In order to support an inference of retaliation through disparate treatment, a plaintiff must show that her comparator employee was similarly situated "in all material respects, including […] conduct" (*see Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)), and that their work rule violations and disciplinary records were "nearly identical." *See AutoZone*, 272 S.W.3d at 594. In only one respect can plaintiff's situation be equated with Monterrubio's, and that concerned the District's efforts in August, September, and October of 2008 to foster cooperation and professional communication between coaches in the girls' athletic department. (Supp. CR, Vol. I. 184, 227-231) When these efforts failed, plaintiff was placed on a growth plan, but it is undisputed that Monterrubio, who had not engaged in any protected activity, was, on the same day, also placed on a growth plan. (Supp. CR, Vol. I. 184-185, 236-237)

Aside from this lone instance, plaintiff and Monterrubio's work rule violations are not remotely comparable in quantity or degree. (Supp. CR, Vol. I. 105-106, 191-192) Plaintiff was terminated for a multitude of significant reasons that were not shared by Monterrubio or any other employee. *Id.* Such reasons included AHISD's determination that plaintiff lied in the course of its investigation

into a breach of state testing protocols when plaintiff's cell phone rang multiple times during a TAKS exam (Supp. CR, Vol. I. 188, 268-69); making false reports to Kershner concerning her and others' behavior in meetings, which Kershner witnessed herself and knew to be false (Supp. CR, Vol. I. 189, 312-313); the allegations plaintiff made to another teacher that Monterrubio and Boyer were "lesbian dikes" who "get drunk and share men." (Supp. CR, Vol. I. 189-190, 321-322); plaintiff's failure to prepare lesson plans and maintain student grades (Supp. CR, Vol. I. 96-97, 327-335); her complaints about her coworkers made to students and her repeated failure to comply with Kershner's directives not to bring her daughter to school during work hours (Supp. CR, Vol. I. 189-190).

The evidence conclusively establishes that plaintiff was not "similarly situated" with Monterrubio or any other AHISD employees (Supp. CR, Vol. I. 105-106, 191-192), and as such, her allegations are insufficient as a matter of law to show retaliation through disparate treatment. *See Monarrez*, 177 S.W.3d at 917.

## **PRAYER**

For the foregoing reasons, AHISD prays that this Court reverse the trial court's order denying its Plea to the Jurisdiction, and dismiss plaintiff's claims for want of subject matter jurisdiction.

Respectfully submitted,

**SCHULMAN, LOPEZ & HOFFER, LLP**

/s/ Robert A. Schulman
Robert A. Schulman
State Bar Number 17834500
Email: rschulman@slh-law.com
Leonard J. Schwartz
State Bar Number 17867000
Email: lschwartz@slh-law.com
Bryan P. Dahlberg
State Bar Number 24065113
Email: bdahlberg@slh-law.com
517 Soledad Street
San Antonio, Texas 78205
Tel.: (210) 538-5385
Fax: (210) 538-5384

**ATTORNEYS FOR APPELLANT
ALAMO HEIGHTS ISD**

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of April 2015, a true and correct copy of the foregoing document has been delivered by electronic service to counsel of record for Appellee in this proceeding as follows:

Mr. Matthew R. Pearson, Gravely & Pearson, L.L.P., 425 Soledad Street, Suite 600, San Antonio, Texas 78205,
Email: mpearson@gplawfirm.com.

Mr. Brendan K. McBride, McBride Law Firm, 425 Soledad Street, Suite 600, San Antonio, Texas 78205,
Email: brendan.mcbride@att.net.

/s/ Robert A. Schulman
Robert A. Schulman,
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this Reply Brief contains 8,137 words (excluding the caption, table of contents, index of authorities, signature, certificate of service, and certificate of compliance).

I further certify that this is a computer-generated document created in Word for Mac, using 14-point typeface for all text, except for footnotes, which are in 12-point typeface. In making this certificate of compliance I am relying on the word count provided by the software used to prepare this document.

I understand that a copy of this document may be posted on the Court's website and that the electronically filed copy of the document becomes part of the Court's record.

Copies have been sent to all parties associated with this case.

/s/ Robert A. Schulman
Robert A. Schulman,
Attorney for Appellant

# APPENDIX

**Tab** **Document**

1      AHISD's Motion to Exceed Word Limits of TRAP 9.4(i)(2)(C)

No. 04-14-00746-CV

---

In the Court of Appeals
for the Fourth District of Texas

---

**ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT**,
Appellant,

v.

**CATHERINE CLARK**,
Appellee.

---

On Appeal from the 285th Judicial District Court
of Bexar County, Texas

---

**APPELLANT'S MOTION TO EXCEED
WORD LIMITS OF TRAP 9.4(i)(2)(C)**

---

Appellant Alamo Heights Independent School District files this unopposed motion, contemporaneously with its Reply, asking the Court to allow it to exceed the word limits set for its Reply by Texas Rule of Appellate Procedure 9.4(i)(3)(C), and would respectfully show the following:

1.    This case is an accelerated appeal of the trial court's interlocutory order denying Appellant's Plea to the Jurisdiction.

2. This Court has the authority under the Texas Rules of Appellate Procedure 9.4(i)(4) to allow a party to exceed the word limits.

3. This Court should allow AHISD to exceed the 7,500 word limit for its Reply by **637 words** because this case involves several complex and novel legal issues that required substantial briefing from both parties, as well as a Clerk's Record that has been filed in three separate installments totaling over 1,000 pages of pleadings, documents and testimony that make up the jurisdictional record in this case

4. This is the first such request by AHISD, and if the Court grants this relief, AHISD's combined briefing in this case will not exceed the 27,000 word limit established by Rule 9.4(i)(2)(B).

5. Accordingly, AHISD believes that the foregoing reasonably explains the need for the requested relief, and that good cause exists for granting this relief. Appellee's counsel is unopposed to this Motion, as indicated below.

**WHEREFORE, PREMISES CONSIDERED**, AHISD asks the Court to grant this Motion and allow it to exceed the word limits for its Reply by 637 words as requested herein.

Respectfully submitted,

**SCHULMAN, LOPEZ, & HOFFER, LLP**


/s/ Robert A. Schulman
Robert A. Schulman
Texas Bar No. 17834500
Email: rschulman@slh-law.com
Leonard J. Schwartz
Texas Bar No. 17867000
Email: lschwartz@slh-law.com
Bryan P. Dahlberg
Texas Bar No. 24065113
Email: bdahlberg@slh-law.com
517 Soledad Street
San Antonio, Texas 78205-1508
Telephone:  (210) 538-5385
Facsimile:   (210) 538-5384
**ATTORNEYS FOR APPELLANT**


## CERTIFICATE OF CONFERENCE

On April 9, 2015, Bryan Dahlberg corresponded with Appellee's counsel, Matthew Pearson, regarding the relief sought in this Motion. Mr. Pearson notified Mr. Dahlberg that he does not oppose this Motion to Exceed the Word Limits of TRAP 9.4(i)(2)(C).


/s/ Robert A. Schulman
Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April 2015, a true and correct copy of the foregoing document has been delivered by electronic service to counsel of record for Appellee in this proceeding as follows:

Mr. Matthew R. Pearson, Gravely & Pearson, L.L.P., 425 Soledad Street, Suite 600, San Antonio, Texas 78205,
Email: mpearson@gplawfirm.com.

Mr. Brendan K. McBride, McBride Law Firm, 425 Soledad Street, Suite 600, San Antonio, Texas 78205,
Email: brendan.mcbride@att.net.

/s/ Robert A. Schulman
Attorney for Appellant